UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA

v.

JUAN CARLOS REYNOSO

**UNITED STATES' MOTION TO HOLD JUAN CARLOS REYNOSO IN CONTEMPT OF THE JANUARY 31, 2025, WARRANT TO SEIZE PROPERTY SUBJECT TO FORFEITURE**

I.   INTRODUCTION

The Government respectfully moves the Court to find Juan Carlos Reynoso in contempt of a seizure warrant issued in this District on January 31, 2025 (the "Seizure Warrant"), which authorized federal authorities to seize 119.65 bitcoin (valued at $12,650,785.94 USD equivalent as of on or about January 30, 2025) stored on the wallet with root address bc1qd02m2fgh82dcefymtpq3mxxqvydz29rfcgdgac (the "bc1qd Wallet") (the "Subject Assets"), and further ordered the following:

- "JUAN CARLOS REYNOSO shall not obstruct, impede or interfere with the seizure of the SUBJECT ASSETS."

- "The SUBJECT ASSETS must be transferred, within 24 hours from the date of service of this seizure warrant, to the following Government-controlled address: bc1q9mv775udnfza5ccrgg2cvh73fj7sscvxm2er2h."

(Seizure Warrant, attached hereto as Exhibit ("Ex.") A).  Despite proper notice and ample opportunity to comply, Reynoso violated the Seizure Warrant by failing to transfer the Subject Assets to the Government-controlled address as ordered, and by obstructing, impeding and

1

interfering with the seizure of the Subject Assets by offloading them from the bc1qd Wallet to other wallets after the Seizure Warrant was served. As of the date of this filing, the Subject Assets have been completely dissipated from the bc1qd Wallet.

Accordingly, based on the facts and legal authority discussed further below, the Government seeks an order finding Reynoso in contempt of the Seizure Warrant and ordering sanctions that would: (i) ensure compliance with the Seizure Warrant; (ii) compensate for harms caused by Reynoso's contempt; and (iii) reinforce the Court's authority.

## II.    FACTUAL BACKGROUND

### A.  The Government's Valid Service of the Seizure Warrant and Communications with Counsel for Reynoso Reiterating Reynoso's Obligation to Comply with the Seizure Warrant

On Friday, January 31, 2025, a Magistrate Judge in the District of Puerto Rico issued a warrant to seize property subject to forfeiture pursuant to 18 U.S.C. §§ 981 & 982 as well as 21 U.S.C. § 853(f). That same day, undersigned counsel asked counsel for Reynoso whether he would accept service on behalf of his client. At 1:20 PM,[1] counsel for Reynoso wrote in an email: "I am authorized to accept the above-captioned Seizure Warrant for Assets on behalf of my client, Juan Carlos Reynoso. Please email me the warrant at your earliest convenience." (January 31, 2025, Email from Reynoso's Counsel to Government Counsel Accepting Service, attached hereto as Ex. B).

Four minutes later, at 1:24 PM, the Government properly effected service of the Seizure Warrant by sending it via email to Reynoso's attorney. (January 31, 2025, Email to Reynoso's Counsel, attached hereto as Ex. C). The Seizure Warrant required that, upon service, "the

---

[1] While the time stamps contained on the attached exhibits are in Atlantic Standard Time, the times set forth in this motion have been converted to Eastern Standard Time (EST), which, upon information and belief, is the time zone in which Reynoso and his counsel are located.

SUBJECT ASSETS must be transferred, *within 24 hours*" to the specified Government-controlled address. Ex. A (emphasis added).

Reynoso did not transfer the Subject Assets to the Government-controlled address within the required 24-hour period. Upon the expiration of the 24-hour period, on February 1, 2025, at 3:08 PM, undersigned counsel emailed Reynoso's counsel as follows: "This is to confirm that the Subject Assets were not transferred to the Government wallet specified in the warrant within the time frame ordered by the Court." (February 1, 2025, Email to Reynoso's Counsel, attached hereto as Ex. D). Reynoso's counsel did not respond to that email (or otherwise communicate with undersigned counsel) until February 3.

On Monday, February 3, at 3:29 PM, more than 72 hours (three days) after service of the Seizure Warrant, Reynoso's counsel emailed undersigned counsel that he had not provided a copy of the Seizure Warrant to his client immediately after he had accepted service of it on Friday, January 31, because he was not aware that the matter was "time-sensitive" or "that the warrant imposed any obligation on me or my client." (February 3, 2025, Reynoso's Counsel's Email to Government Counsel, attached hereto as Ex. E). Reynoso's counsel further represented that he had first opened the Seizure Warrant and the Government's subsequent email of February 1 early in the morning of Sunday, February 2. (Ex. E). Reynoso's counsel further explained that he would file a motion to quash the Seizure Warrant; however, as of the date of the instant motion, he has not done so. (Ex. E). Nor has Reynoso's counsel indicated the alleged grounds for seeking a motion to quash.

On Tuesday, February 4, at 8:16 PM, undersigned counsel emailed counsel for Reynoso the following: "Please note that we consider any dissipation by Mr. Reynoso of the SUBJECT

ASSETS to be in violation of the order not to 'obstruct, impede or interfere with the seizure of the SUBJECT ASSETS.'" (February 4, 2025, Email to Reynoso's counsel, attached hereto as Ex. F).[2]

### B. Reynoso's Violation of the Seizure Warrant by Transferring the Subject Assets to Addresses Other Than the Specified Government-Controlled Address

During the course of the above events, Reynoso was offloading the Subject Assets from the bc1qd Wallet to other addresses, which were not in the Government's control. In particular, Reynoso transferred funds after each of the following events:

- service of the Seizure Warrant on January 31;
- the Government's February 1 notification to Reynoso's counsel of the failure to comply with the Court's order;
- Reynoso's counsel's February 3 email to the Government claiming that he had not opened the Seizure Warrant before February 2; and,
- the Government's February 4 email to Reynoso's counsel advising him that dissipation of the assets constituted a violation of the Seizure Warrant.

As of February 5, 2025, all the Subject Assets had been offloaded from the bc1qd Wallet to other addresses not in the Government's control. The bc1qd Wallet was linked to Reynoso based on information obtained in the investigation, including data obtained from electronic devices seized from Reynoso pursuant to a search warrant from the District of New Jersey, dated June 29, 2024. The bc1qd Wallet is a "non-custodial" wallet, which means that the user maintains full control of his cryptocurrency, rather than relying on a third party (like an exchange) to manage access. Between January 31, 2025, (after service of the Seizure Warrant) and continuing through at least February 5, 2025, Reynoso executed a series of transactions to move all bitcoin away from the

---

[2] Prior to the filing of the instant motion, undersigned counsel attempted to confer with Reynoso's counsel to inquire whether Reynoso was willing to comply with the Seizure Warrant without the need for Court intervention. Reynoso's counsel was not available so the attempt to confer was not successful. Undersigned counsel nonetheless proceeded to file the instant motion owing to its urgency and to alert the Court to Reynoso's continued violation of the Seizure Warrant through the transfer and dissipation of the Subject Assets, as described below.

4

bc1qd Wallet:[3]  This is represented below, based on publicly available information from the blockchain:[4]

---

[3] Bitcoin's blockchain is a public ledger where every transaction is recorded with the following: the sender's public address; the receiver's public address; the amount transferred; and a timestamp. Funds can be traced by starting with a known address and then following the chain of transaction to see where the funds move.

[4] The timestamps are in EST.



### III.     ARGUMENT

Federal courts possess inherent power to enforce their orders through contempt. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44 (1991) ("[I]t is firmly established that [t]he power to punish for contempts is inherent in all courts." (internal quotation marks omitted)).  This authority also is grounded in 18 U.S.C. § 401, which provides that "[a] court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority[.]"  Although contempt may be criminal or civil in nature, the present motion primarily seeks to coerce compliance with the Seizure Warrant and thereby falls under the rubric of civil contempt. *United States v. Saccoccia*, 433 F.3d 19, 27 (1st Cir. 2005) (differentiating between civil and criminal contempt); *see also Weitzman v. Stein,* 98 F.3d 717, 718 (2d Cir. 1996) (imposing compensatory sanctions after defendant was found to be in contempt of seizure order that prohibited defendant from interfering with the seizure).

In accordance with the standard set forth in the First Circuit, the Government meets the movant's burden to establish civil contempt by demonstrating the following by clear and convincing evidence:

> (1) that the alleged contemnor had notice that he was within the order's ambit;
> (2) that the order was clear and unambiguous;
> (3) that the alleged contemnor had the ability to comply; and
> (4)  that the order was indeed violated.

*Saccoccia*, 433 F.3d at 27 (internal quotation marks and internal citations omitted). "Since the civil contemnor may absolve [himself] of the sanction by complying with the contempt order, civil contempt sanctions may be imposed with merely notice and an opportunity to be heard." *AngioDynamics, Inc. v. Biolitec AG*, 780 F.3d 420, 426 (1st Cir. 2015).

Moreover, the movant can carry its burden using sufficient documentary evidence, without the need for an evidentiary hearing. *See Morales-Feliciano v. Parole Bd. of P. R.,* 887 F.2d 1, 6 (1st Cir. 1989) (due process does not require an evidentiary hearing "when documentary evidence [is] sufficient to establish contempt and defendant[ ] failed to demand a hearing or assert any material issue of fact").

As explained further below, each of the four prongs for civil contempt is satisfied here by clear and convincing evidence:

### A. Juan Carlos Reynoso Had Notice That He Was Within the Ambit of An Unambiguous Order (Prongs 1 and 2)

The Court's order in the Seizure Warrant (which authorized the seizure of the Subject Assets stored on the bc1qd Wallet) was unambiguous. Specifically, the Court ordered Reynoso to "not obstruct, impede or interfere with the seizure of the SUBJECT ASSETS," and to transfer the SUBJECT ASSETS to the specified Government-controlled address "within 24 hours from the date of service of this seizure warrant . . . ." (Ex. A). Put another way, the Court's order prohibited Reynoso, by name, from interfering with the seizure, followed immediately by an order for the Subject Assets to be transferred within 24 hours. It therefore was clear on the face of the order that Reynoso (not the Government or any other party) was obligated to execute the transfer of the Subject Assets to the Government-controlled address within the specified period. Moreover, because Reynoso was the exclusive owner and controller of the bc1qd Wallet, the transfer of the Subject Assets had to be conducted by him. Accordingly, Reynoso "could not have been confused" that he was "expected to behave in the indicated fashion." *Pina v. Feliciano-Rivera*, No. CV 11-2217 (GAG/BJM), 2017 WL 2889661, at *3 (D.P.R. June 16, 2017), report and recommendation adopted, No. CV 11-2217 (GAG), 2017 WL 2910997 (D.P.R. July 6, 2017) ("Feliciano could not have been confused as to who was expected to behave in the indicated fashion, because those individuals were identified, either by name or function . . . ."); *see also Intl. Longshoremen's Assn.-*

8

*AFL-CIO, Loc. 1575 v. Horizon Lines of Puerto Rico, Inc.,* 865 F. Supp. 2d 197, 200 (D.P.R. 2012) ("The Court's unequivocal language in its October 11, 2007 order was sufficiently clear to put the Union on notice that they were required to return all assets . . . ."); *United States v. Lopez*, 688 F. Supp. 92, 94 (E.D.N.Y. 1988) (The issuance of an order pursuant to a seizure warrant to execute a release form authorizing the transfer of assets to government custody is "by no means extraordinary or without precedent.").

Reynoso also had notice that he was within the ambit of this clearly worded Seizure Warrant: service of the Seizure Warrant was properly executed upon Reynoso's counsel after he agreed in writing to accept service on behalf of his client; the Seizure Warrant identifies Reynoso by name; and the Seizure Warrant expressly references the bc1qd Wallet controlled by Reynoso. *See* Ex. A. Moreover, the Government sent follow-up emails to Reynoso's counsel in the ensuing days clearly advising him of his client's non-compliance with the Seizure Warrant. Even accepting that Reynoso's counsel did not open the Seizure Warrant prior to February 2, 2025, that does not explain Reynoso's offloading of the Subject Assets from the bc1qd Wallet *subsequent* to February 2, 2025, nor his failure to comply with the Seizure Warrant in the days since.[5]

### B. Reynoso Had the Ability to Comply (Prong 3)

The Supreme Court has held that "an alleged contemnor has the burden of showing a current inability to comply with a court order," and that "the contemnor must overcome a presumption of ability to comply with a court order." *Hicks v. Feiock*, 479 U.S. 1305, 1306 (1986). The Government submits that Reynoso will be unable to satisfy this burden: as explained in detail in

---

[5] It should be noted that "[p]arties, the parties' officers and agents, and nonparties who are in active concert with other persons bound are all subject to an injunctive order provided they have actual notice." *Pina v. Feliciano-Rivera*, No. CV 11-2217, 2018 WL 11417355, at *3 (D.P.R. Nov. 28, 2018).

Section II(B), above, Reynoso had the ability to comply fully with the Seizure Warrant because he controlled the bc1qd Wallet and the offloading of the Subject Assets to other addresses.

### C. Reynoso Violated the Court's Order (Prong 4)

Reynoso did not comply with the Court's order to transfer the Subject Assets to the Government-controlled address within 24 hours. Nor did Reynoso make any attempt to remedy his non-compliance by making a subsequent effort to transfer the Subject Assets to the Government-controlled address (or at least preserve them on the bc1qd Wallet) in the days following February 2, 2025. Instead, Reynoso proceeded to violate the Court's order to "not obstruct, impede or interfere with the seizure of the SUBJECT ASSETS." As explained above, the

Subject Assets were offloaded entirely from the bc1qd Wallet—despite repeated Government warnings against doing so. Reynoso's violations are reflected in the timeline below:



### D. The Court Should Impose a Compensatory Fine in the Amount of the Subject Assets that Have Been Transferred in Violation of the Seizure Warrant

To address Reynoso's contempt, the Court should impose compensatory sanctions requiring transfer of the Subject Assets (119.65 bitcoin) to the Government-controlled wallet, as originally required by the Seizure Warrant. Such relief would be an appropriate sanction that is well within the Court's discretion and appropriately tailored to the contumacy in this case. "Judicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or

both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *United States v. United Mine Workers,* 330 U.S. 258, 303–04 (1947) (internal citation omitted). In exercising its discretion, the Court must "consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the desired result." *Pina*, 2017 WL 2889661, at *4 (internal citations omitted) (imposing compensatory fine). "A trial court's power to assert its authority over a contemnor is broad." *Goya Foods, Inc. v. Wallack Mgt. Co.*, 344 F.3d 16, 21 (1st Cir. 2003).

In this case, Reynoso's actions have frustrated the seizure of the Subject Assets. Reynoso has dispersed the 119.65 bitcoin that were stored on the bc1qd Wallet into various wallets that have been traced by the Government. As the First Circuit has explained: "In addition to nudging a party to comply with a past court order, a district court may also utilize sanctions to compensate the complainant for harms suffered as a result of the contempt and to reinforce the court's own authority." *AngioDynamics*, 780 F.3d at 426; *see also, e.g., Intl. Longshoremen's Assn.-AFL-CIO, Loc. 1575,* 865 F. Supp. 2d at 200 (requiring party found to be in contempt to pay the amount of "improperly diverted lease payments"); *Brown v. Colegio de Abogados de Puerto Rico*, 765 F. Supp. 2d 133, 140 (D.P.R. 2011) ("The Court must fashion sanctions that will ensure compliance with the Court's orders and at the same time correct some of the damage done by their violations."); *Latin Am. Music Co., Inc. v. Archdiocese of San Juan of the Roman Catholic and Apostolic Church*, No. CV 00-1618 (PG), 2007 WL 9677029, at *3 (D.P.R. Aug. 28, 2007) ("complainant is entitled as of right to an order in civil contempt imposing a compensatory fine") (internal quotation marks and internal citation omitted); *Lopez*, 688 F. Supp. at 94-95 (imposing fine of $2,500 per week to "enforce compliance with [the court's] lawful orders" after finding defendants in contempt of

seizure warrant requiring them to execute a release form transferring bank account to government custody).

IV. **CONCLUSION**

For the foregoing reasons, the Government has shown by clear and convincing evidence that Reynoso is in civil contempt of the Seizure Warrant. Reynoso had notice that he was within the ambit of an unambiguous order and repeatedly violated said order despite having the ability to comply. The Court therefore should find Reynoso in contempt of the Seizure Warrant and order compensatory sanctions requiring transfer of the Subject Assets to a Government-controlled wallet, as originally required by the Seizure Warrant. Such relief would ensure compliance with the Seizure Warrant, compensate for harms caused by Reynoso's contempt, and reinforce the Court's authority.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 7th day of February 2025.

>W. STEPHEN MULDROW
>United States Attorney
>
>GLENN S. LEON
>Chief, Fraud Section
>United States Department of Justice
>
>By:   /s/ *Jonathan Gottfried*
>      Assistant United States Attorney
>      U.S. Attorney's Office for the
>      District of Puerto Rico
>      Torre Chardón, Suite 1201
>      350 Carlos Chardón Street
>      San Juan, PR 00918
>      (787) 282-1889
>      Jonathan.Gottfried@usdoj.gov
>
>      Ariel Glasner
>      Trial Attorney
>      U.S. Department of Justice
>      Criminal Division, Fraud Section

1400 N.Y. Ave. NW
Washington, DC 20530
(202) 598-2522
Ariel.Glasner@usdoj.gov

Tamara Livshiz
Trial Attorney
U.S. Department of Justice
Criminal Division, Fraud Section
1400 N.Y. Ave. NW
Washington, DC 20530
(202) 674-5670
Tamara.Livshiz@usdoj.gov

## CERTIFICATE OF SERVICE

I, Jonathan Gottfried, Assistant United States Attorney for the District of Puerto Rico, hereby certify that a copy of the foregoing has been sent via email to counsel for Juan Carlos Reynoso.

                                                    By:   s/ Jonathan Gottfried_____
                                                               Jonathan Gottfried