**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

**CASE NO. 25-mc-00068-FAB**

**UNITED STATES OF AMERICA,**

     **Plaintiff,**

**v.**

**JUAN CARLOS REYNOSO,**

     **Defendant.**

_____/

### JUAN REYNOSO'S RESPONSE TO ORDER TO SHOW CAUSE

On February 10, 2025, the Court ordered Juan Carlos Reynoso to "show cause why he should not be held in contempt of the January 31, 2025 warrant to seize property subject to forfeiture."[1] (Dkt. No. 10).   As the "Warrant to Seize Property Subject to Forfeiture" was not properly served upon Mr. Reynoso, nor did he actually receive the warrant prior to the alleged breach and he did not have knowledge of the two provisions the government claims he violated, the Court should deny the government's request for civil contempt sanctions.   *See Project B.A.S.I.C. v. Kemp,* 947, F.2d 11, 17   (1st Cir. 1991)(A person cannot be held in contempt for failing to comply with a court order unless that person has notice of the order and its terms.).

---

[1] The Court subsequently extended the date to file a response to February 24, 2025. (Dkt. No. 13).

Further, the forfeiture seizure warrant is invalid on its face because it attempts to impose an affirmative obligation on Mr. Reynoso, to preserve and transfer property to the government that is not authorized by Federal Rule of Criminal Procedure 41. Indeed, such a demand constitutes an impermissible end-run around the safeguards and procedures established by Congress to restrain property subject to forfeiture that are contained in 18 U.S.C. § 853(e).

Lastly, the government's compelled request infringes on Mr. Reynoso's Fifth Amendment rights under the United States Constitution and must be rejected. *See United States v. Hubbell,* 530 U.S. 27 (2000)(Constitutional privilege against self-incrimination applies to the act of production of any incriminating evidence).

In light of the significant issues of material fact in dispute, Mr. Reynoso requests an evidentiary hearing. *See Morales-Feliciano v. Parole Bd. of P.R.*, 887 F.2d 1, 6 (1st Cir. 1989) (in civil contempt proceedings, parties who assert a genuine issue of a material fact and request a hearing are entitled to an evidentiary hearing).

## I. <u>INTRODUCTION</u>

This case revolves around the attempted seizure of a decentralized bitcoin wallet, pursuant to the forfeiture statutes contained in 18 U.S.C. §§ 981 and 982. This is not a criminal forfeiture and the government has not charged Mr. Reynoso with any crime. Indeed, the government concedes that it seeks civil contempt

remedies, rather than criminal sanctions,  for Mr. Reynoso's alleged non-compliance.  *See* Govt. Motion at 7.[2]

On January 31, 2025, the government obtained a Warrant to Seize Property Subject to Forfeiture as to Mr. Reynoso for "property located within the  jurisdiction of the District of Puerto Rico" and thereafter, an attorney for the government contacted his counsel regarding "accepting service of a warrant."[3]  Assuming that this was a typical forfeiture seizure warrant and without any notice to the contrary, counsel accepted service.

The forfeiture seizure warrant, however, was anything but typical.  While the warrant was directed to "[a]ny authorized law enforcement offices" to execute, the government has taken the position that by accepting service of  the warrant, in lieu of actual service of the document upon Mr. Reynoso, counsel agreed to take action to execute the warrant. Specifically, to locate and seize certain non-physical assets,[4]

---

[2]/" . . . the present motion primarily seeks to coerce compliance with the Seizure Warrant and thereby falls under the rubric of civil contempt."  *Id.* (citations omitted).   A copy of the forfeiture seizure warrant is attached hereto as Exhibit A.

[3]/ During this time, Juan Reynoso was represented by attorney Walter Reynoso, Esq., who bears the same last name but is not related to the defendant. To avoid confusion, attorney Walter Reynoso will be referred to as "counsel" throughout this motion.

[4]/ Bitcoins are not physically located in any specific place. Instead, they exist as records on the blockchain, which is a decentralized ledger stored on every computer that makes up the Bitcoin network. Bitcoin wallets enable users to store the information necessary to transact bitcoins. *See* https://en.wikipedia.org/wiki/Bitcoin (last accessed February 23, 2025).

and subsequently to transfer the assets to the government within a twenty-four (24) hour time period during the weekend. Because neither the discussions regarding "service," nor the terms of the warrant, imposed any such affirmative obligations on counsel or Mr. Reynoso, and because the government's attempt to hold him in contempt, undermine any reasonable understanding conveyed to counsel when agreeing to receive an emailed version of the seizure warrant, this Court should find that service was improper. Counsel did not agree to become an agent of the government in this matter.

The government's improper service of the January 31, 2025 seizure warrant — on an agent of the defendant (not the government) with only limited authority who was given no notice of its highly unusual provisions — effectively seeks to transform the warrant into a subpoena, requiring independent, affirmative action by Mr. Reynoso or a writ of execution for which jurisdiction would otherwise be lacking. The invalid service and purported imposition of subpoena obligations go well beyond the language in Rule 41 and are contrary to the plain text of the seizure warrant.

More importantly, Mr. Reynoso did not have any knowledge of the two provisions the government claims Mr. Reynoso violated until after its execution time period had lapsed. Neither counsel or Mr. Reynoso learned of the warrant's unusual affirmative obligations and time sensitive nature until after its expiration.

For this reason alone, the government's request must be denied. An individual cannot be punished for failing to comply with an Order he had no idea existed.

Lastly, the forfeiture warrant, issued in the District of Puerto Rico, seeks assets located outside its venue jurisdiction and attempts to compel Mr. Reynoso to admit possession and control of the subject assets by ordering that he transfer such assets.[5] This compelled production is a violation of Mr. Reynoso's Fifth Amendment right against self-incrimination and must be rejected. *See Hubbell, supra.*

## II.  PROCEDURAL BACKGROUND

### A.  <u>The Seizure Warrant</u>

On Friday, January 31, 2025, at approximately 11:53 AM,[6] the government obtained a forfeiture warrant for the seizure of 119.65 bitcoin assets stored in a "wallet" (the "subject assets") with a root address specified in the warrant. *See* Exhibit A. The warrant, directed to "[a]ny authorized law enforcement officer" specifically sought to seize "certain property located within the jurisdiction of the District of Puerto Rico." *Id.* The warrant "**commanded**" the law enforcement

---

[5]/   Mr. Reynoso submits that the seizure warrant is in violation of the geographical restrictions contained in Federal Rule of Criminal Procedure 41(b) and does not waive any arguments related to this issue.

[6]/ While the time on the attached Seizure Warrant is in Atlantic Standard Time (12:53 PM), the times set forth in this motion have been converted to Eastern Standard Time (EST), which is where Mr. Reynoso's counsel was located.

officer "to execute this warrant and seize the property on or before February 13, 2025." *Id.* (emphasis in original).

In addition to the standard Rule 41 seizure warrant language, the warrant contained two unconventional demands stated as follows:

> Moreover, it is ordered that:
>
> - JUAN CARLOS REYNOSO shall not obstruct, impede or interfere with the seizure of the SUBJECT ASSETS.
>
> - The SUBJECT ASSETS must be transferred, within 24 hours from the date of service of this seizure warrant, to the following Government-controlled address: (root address excluded).

*See* Exhibit A. Such language is out of the ordinary because under Rule 41, any seizure must be effected though the execution of the warrant by a law enforcement officer. Rule 41 does not operate in a manner to impose self-execution responsibilities on individuals or counsel.

## B.  Service of Process Ruse

Armed with this unconventional forfeiture seizure warrant, the government contacted counsel for Mr. Reynoso in order to "discuss an update in the matter." *See* Exhibit B at p. 3. At approximately 1:00 PM on Friday, while counsel was with his family after attending a Grandparents Day event at his grandson's school as previously disclosed to the government, he stepped away to accept the call. Three prosecutors were on the call and Assistant United States Attorney Jonathan

Gottfried informed him that the government had "legal process" to serve on his client. Specifically, AUSA Gottfried explained that they had a seizure warrant for assets and inquired if he would accept service on behalf of Mr. Reynoso. Assuming that this was a typical forfeiture seizure warrant, counsel agreed to accept service of the warrant.

At no point during this five-minute call did any of the three prosecutors alert counsel that the "Warrant to Seize Property Subject to Forfeiture" contained an unconventional demand for compliance. Specifically, that the government deemed Mr. Reynoso or counsel responsible for any affirmative action as part of counsel's mere acceptance of service. For example, the warrant stated that the subject assets "must be transferred, within 24 hours from the date of the service of this seizure warrant" to a "Government-controlled address." *See* Exhibit A. However, there was no notice to counsel that the government was seeking to shift to counsel or his client any affirmative execution responsibility. The self-execution terms of the warrant fall so far outside the scope of Rule 41 as to make it unreasonable for the government to have failed to notify counsel of the purported responsibility to be undertaken merely upon acceptance of a Rule 41 seizure warrant.

Indeed, not even when counsel wished them a "good weekend" did any of the three prosecutors comment that the next day - Saturday - was the deadline to transfer the described digital assets. The prosecutors did not even alert counsel that compliance with the warrant was time-sensitive. All three remained silent.

Based on the government's false impression that the warrant was a typical "Warrant to Seize Property Subject to Forfeiture," defense counsel agreed to accept service of process. The government construes this acceptance of service to require that Mr. Reynoso or his counsel, (in violation of significant Fifth Amendment protections) take affirmative steps to track down, produce, and transfer the property to the government. The government's view, that the warrant thus places the obligation on the defendant, *rather than law enforcement*, to actively assist in transferring the assets within 24 hours goes well beyond any conveyed or even presumed authority of counsel to unknowingly waive such fundamental individual rights.

Shortly after the phone call, at 1:25 p.m. on January 31, 2025, an attorney for the government emailed the warrant to counsel. At the time, counsel remained with his family after attending the Grandparents Day event at his grandson's school, as he had previously informed government counsel of this scheduling conflict when they spoke on the phone. As a result, counsel did not view the warrant at the time it was sent as he had family commitments over the weekend and no knowledge that the warrant was time-sensitive. *See* Email communication from counsel to government attached hereto as Exhibit C.

On Sunday February 2, 2025, counsel for the first time opened the government's email. At that point, the asserted 24-hour time period for producing the "subject assets" to the government had expired, and counsel had not yet

provided the warrant to his client. *Id. See* Exhibit C. On February 7, 2025, the government filed a motion to show cause why Mr. Reynoso should not be held in contempt, arguing that its service of the warrant on undersigned counsel was valid and that the failure to transfer the assets subjected him to civil contempt.

### III.  LEGAL ARGUMENT

#### A.     Government Failed  to Satisfy Civil Contempt Prongs

Civil contempt is used "to coerce compliance with a court order or to compensate a party harmed by non-compliance." *United States v. Puerto Rico*, 642 F.3d 103, 108 (1st Cir. 2011). Due to "contempt power's virility and damage potential," federal courts use a four-pronged test to cabin judicial discretion and ensure that judges exercise their contempt powers judiciously. *United States v. Saccoccia*, 433 F.3d 19, 27 (1st Cir. 2005) (*quoting Project B.A.S.I.C. v. Kemp*, 947 F.2d 11, 16 (1st Cir. 1991)). A complaining party must prove civil contempt by clear and convincing evidence. *Project B.A.S.I.C.*, 947 F.2d at 16

Accordingly, in order to prevail on its civil contempt claim, the government must prove, with clear and convincing evidence, the following four prongs. *Saccoccia*, 433 F.3d at 27.  First, the evidence must show "that the alleged contemnor had notice that he was 'within the order's ambit.'" *Id.* (*quoting Project B.A.S.I.C.*, 947 F.2d at 17). Second, the court's order must have been "clear and unambiguous." *Id.* (*quoting AccuSoft Corp. v. Palo*, 237 F.3d 31, 47 (1st Cir. 2001)).

Third, the alleged contemnor must have "had the ability to comply" with the order the contemnor is alleged to have violated. *Id.* (*citing United States v. Rylander*, 460 U.S. 752, 757 (1983)). Fourth, the alleged contemnor must have actually violated the court order. *Id.* (*citing Project B.A.S.I.C.*, 947 F.2d at 17).

In the instant case, the government fails to satisfy each of the four prongs with competent evidence.

### 1.   Mr. Reynoso Had No Knowledge of the Seizure Warrant's Unusual Provisions

The first and foremost requirement in any contempt proceeding is the issue of knowledge.  "[I]t is beyond serious question that, as a necessary prelude to a finding of contempt, the putative contemnor should have reasonably definite advance notice that a court order applies to it." *Project B.A.S.I.C.*, 947 F.2d at 17. Advance notice is obtained through proper service of process to the alleged contemnor.

As demonstrated below, the government failed to provide proper service of process on Mr. Reynoso or his counsel and he thus, did not have knowledge of the unusual provisions in the forfeiture warrant and its affirmative obligations until after the time to comply had expired.

a.    **Attorneys for the Government are Not Authorized**
      **to Execute Warrants**

Federal Rule of Criminal Procedure 41 provides the framework to obtain and serve seizure warrants, including property subject to civil and criminal forfeiture. It specifically identifies who can execute service of a  seizure warrant as follows:

**Rule 41. Search and Seizure**

**(e) Issuing the Warrant**

**(1) In General.** The magistrate judge or a judge of a state court of record must issue the warrant to an officer authorized to execute it.

Fed.R.Crim.P. 41(e)(1).   Officers authorized to execute warrants are specifically defined as follows:

**(a) Scope and Definitions.**

**(2) Definitions.** The following definitions apply under this rule:

( C) "Federal law enforcement officer" means a government agent ***(other than an attorney for the government)*** who is engaged in enforcing the criminal laws and is within any category of officers authorized by the Attorney General to request a search warrant

Fed.R.Crim.P.41(a)(2)(C)(emphasis added).

The Magistrate Judge in this case issued the warrant to "[a]ny authorized law enforcement officer." *See* Exhibit A.   Here, there is no factual dispute that it was "an attorney for the government" that attempted to ***serve and execute*** the

seizure warrant on counsel for Mr. Reynoso.[7]  *See* Exhibit B.[8]    As specifically detailed in Rule 41, while government attorneys are authorized to file the necessary pleadings to obtain a warrant, they are not authorized to execute affidavits in support of a warrant or actually serve warrants. Warrants may only be executed by authorized federal officers and as this warrant was not, it is invalid.

### b.    Service of Process Obtained Under False Pretenses

As an initial matter, there is no dispute that the government failed to provide actual notice or service of the warrant on Mr. Reynoso, directly.  The material fact that is in dispute, is the government's attempted service on his counsel under false pretenses.  The government attorneys elected to contact Mr. Reynoso's counsel on a Friday afternoon in an attempt to convince him to accept substitute service of a warrant that they portrayed as a typical forfeiture seizure warrant.   However, the seizure warrant was not typical and served on woefully incomplete, if not, false pretenses.

---

[7]/  It is unclear why a law enforcement agent was not present during the conversation and did not participate in the execution of the seizure warrant.  Such a presence is routine in any government investigation involving forfeiture of assets and relieves prosecutors from becoming potential witnesses in a case such as this.

[8]/  As demonstrated in Exhibit B, the warrant was sent via email from AUSA Jonathan L. Gottfried (USA/PR) (jgottfried@usa.doj.gov).  Mr. Gottfried is a government attorney.

While seizure warrants require law enforcement to execute them within 14 days,[9] *see* Fed. R. Crim. P. 41(e)(2)(A)(I), this warrant separately imposed an unprecedented 24-hour time requirement, which in the government's view tasked the *defendant*, rather than law enforcement, with execution. The government's characterization of the warrant as a "seizure warrant" was misleading, because according to the government, the warrant imposed immediate requirements on the defendant to (1) admit that he was in custody or control of the property; and (2) take affirmative steps to produce it to law enforcement. The failure to provide adequate notice to counsel of this extraordinary—and improper—obligation, renders the service improper.

Government counsel scheduled a call with defense counsel, but on that call failed to alert defense counsel to the time-sensitive deadlines. Moreover, this call occurred on a Friday afternoon, and imposed an immediate production deadline that fell on a Saturday. The prosecutors deliberate failure to inform counsel that the warrant required immediate action, on a weekend, by both him and his client highlights the government's lack of good faith. As such, there was thus no voluntary consent to accept service.

---

[9] This seizure warrant imposed the same obligation. *See* Exhibit A ("**YOU ARE COMMANDED** to execute this warrant and seize the property on or before February 13, 2025 (not to exceed 14 days)").

Further, defense counsel, the alleged agent, had only a limited authority to accept service and was duped into accepting what the government attorneys portrayed as a typical seizure warrant of assets subject to forfeiture. Only after counsel accepted service did the government assert that the warrant required immediate, affirmative action on the part of the Mr. Reynoso to locate and to provide to law enforcement the property that the warrant directs law enforcement to seize.

The bottom line is that Mr. Reynoso never received notice of the two unusual provisions in the forfeiture warrant that the government claims he breached until after the time period had expired. Accordingly, Mr. Reynoso cannot be held in contempt for failing to comply with a warrant that he had not seen and provisions upon which lacked knowledge. *See Project B.A.S.I.C., supra.*

## 2.    <u>The Warrant is Contradictory and Ambiguous on its Face</u>

The second prong mandates that the order be "clear and unambiguous." For an order to be "clear and unambiguous," the "putative contemnor [must be] able to ascertain from the four corners of the order precisely what acts are forbidden." *Saccoccia*, 433 F.3d at 28. This prong requires that "the words of the court's order have clearly and unambiguously forbidden the precise conduct on which the contempt allegation is based." *Id.* "[A]ny ambiguities or uncertainties . . . must be

read in a light favorable to the person charged with contempt." *Project B.A.S.I.C.*, 947 F.2d at 16.

The language on the seizure warrant is anything but clear.  The warrant specifically requires "any authorized law enforcement officer" to "execute this warrant and to seize the property on or before February 13, 2025."   *See* Exhibit A. The obligation is thus placed on *law enforcement*, and not on the defendant, to seize the "subject assets."  At the same time, the warrant contains an unusual provision ordering JUAN CARLOS REYNOSO, *by name*, not to obstruct, impede or interfere with the seizure of the subject assets, presumably by law enforcement authorities. This directive is further contradicted with another unusual provision apparently ordering the transfer of the described subject assets within 24 hours to a government controlled address. *Id.*   However, this directive, unlike the previous directive, does not name Mr. Reynoso and seems to be directed to law enforcement authorities. These multiple contradictions, along with the unusual nature of the provisions, make for an ambiguous and unclear forfeiture seizure warrant.

Warrants do not command individuals to seize their own property or require them to take any affirmative steps to transfer property to the government.  Rather warrants direct "any law enforcement officer" to seize the subject property.  See Rule 41.  Such a contradiction must be read in the light most favorable to Mr. Reynoso and contempt rejected.

###        3.        Constitutional Safeguards Protect Mr. Reynoso from Compliance with Seizure Warrant

The third prong of the contempt analysis considers whether it was possible for the alleged contemnor to comply with the court order. *Saccoccia*, 433 F.3d at 27. If compliance with a court order is "impossible, neither the moving party nor the court has any reason to proceed with the civil contempt action." *United States v. Rylander*, 460 U.S. 752, 757 (1983). The alleged contemnor "has a burden of production" on impossibility. *Id*. According to the Supreme Court, a contemnor must "show[] a current inability to comply with a court order" and "must overcome a presumption of ability to comply with a court order." *Hicks v. Feiock*, 479 U.S. 1305, 1306, (1986).

Aside from Mr. Reynoso's complete lack of knowledge of the provisions in the forfeiture seizure warrant making compliance physically impossible, any compelled compliance would be in violation of his Fifth Amendment right against self-incrimination. Under the government's reading of the seizure warrant, the document is more properly characterized as a subpoena.  The seizure warrant is a seizure warrant in name only.   In function, it compels the defendant—or his attorney—to take affirmative steps to assist in the location of evidence and to collaborate with the government in the collection of evidence.

   "[T]he constitutional privilege against self-incrimination protects the target of a grand jury investigation"—and certainly an indicted defendant—"from being

compelled to answer questions designed to elicit information about the existence of sources of potentially incriminating evidence." *United States v. Hubbell,* 530 U.S. 27, 43 (2000). "That constitutional privilege has the same application to the testimonial aspect of a response to a subpoena seeking discovery of those sources." *Id.* The Fifth Amendment privilege "not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." *Id.* at 38 (citing *Hoffman v. United States*, 341 U.S. 479 (1951)).

Here, the government demands that Mr. Reynoso prove that he has the authority to control the bitcoin wallet where the subject assets are allegedly stored and subsequently take action to transfer that property. If he does not take such steps, the government declares that he is subject to contempt. This declaration amounts to a flagrant violation of his Fifth Amendment rights. Alternatively, the government treats his counsel as a law enforcement officer—seeking to use him, not just to accept service on his client's behalf, but rather to enlist him to direct the client into assisting the government in its efforts to seize the assets. In so doing, the government violates Mr. Reynoso's Sixth Amendment right to counsel as well.

The government's reading of the warrant offends the Fifth Amendment and seeks to improperly convert either Mr. Reynoso, himself, or the his counsel into a law enforcement agent to execute the warrant. If the government obtains a

warrant to search and seize certain property from a home, law enforcement officers do not show up, hand the defendant the warrant, and ask him to go retrieve the property described therein. Rather, law enforcement officers must locate the property that is subject to the warrant and seize the property. The same is true here. As such, Mr. Reynoso is protected by the Fifth Amendment and thus, does not have the ability to comply with the mandate of the seizure warrant.

### 4.    Mr. Reynoso Has Not Violated the Seizure Warrant

In light of Mr. Reynoso's clear lack of knowledge of the two provisions the government claims Mr. Reynoso violated, because he had not actually received the warrant prior to the alleged breach of these provisions, it was impossible for him to violate the mandate in the seizure warrant. Accordingly, as of today, there has been no violation and the government's motion for contempt must be denied.

### B.    Seizure Warrant Does Not Follow  Section 853(e) Safeguards

There is no provision in Rule 41, Federal Rules of Criminal Procedure, which authorizes the inclusion of conditions that require a defendant to take affirmative action to preserve property which is subject to a warrant. Likewise, the Rule does not authorize any provisions which would compel action from the subject of the warrant.

On the contrary, rather than include such language in Rule 41, Congress specifically provided an express method to obtain the relief which the government

sought in the forfeiture seizure warrant in  Title 21, United States Code, Section

853.  More specifically, Section 853(e)  provides, in relevant part:

> Upon application of the United states, the court may enter a
> restraining order or injunction . . . or take any other action to preserve
> the availability of property described in subsection (a) for forfeiture
> under this section – (A) upon the filing of an indictment or information
> charging a violation of this subchapter or subchapter II for which
> criminal forfeiture maybe ordered under this section and alleging that
> the property with respect to which the order is sought would, in the
> event of conviction, be subject to forfeiture under this section; or (B)
> prior to the filing of such indictment or information, if, after notice to
> persons appearing to have an interest in the property and opportunity
> for a hearing, the court determines that: (I) there is a substantial
> probability that the United States will prevail on the issue of forfeiture
> and that failure to enter the order will result in the property being
> destroyed, removed from the jurisdiction of the court, or otherwise
> made unavailable for forfeiture; and (ii) the need to preserve the
> availability of the property through the entry of the requested order
> outweighs the hardship on any party against whom the order is to be
> entered.

*See* 21 U.S.C. § 853(e)(1).

Any provision in the forfeiture seizure warrant which attempts to impose an

affirmative obligation on Mr. Reynoso, to preserve the property at issue in the

warrant  is not authorized by Rule 41 and constitutes an impermissible end-run

around the safeguards contained in § 853(e), as indicated above.

Mr. Reynoso cannot be held in contempt for violating an order which was

never authorized in the first instance, and which plainly exceeds the permissible

scope of Rule 41, Federal Rules of Criminal Procedure.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, **JUAN CARLOS REYNOSO**, requests that the government's motion for civil contempt be denied.

Respectfully submitted,

**PIÑERA-VAZQUEZ LAW FIRM**

901 Ponce De Leon Blvd.
Suite 400
Coral Gables, Fl. 33134
T. 305.443.0629
E. sbp@pineravazquezlaw.com


    /s/ Silvia B. Piñera-Vazquez
Silvia B. Piñera-Vazquez. Esq.


 /s/ Francisco Rebollo Casalduc
Francisco Rebollo Casalduc
USDC # 205603
529 Sergio Cuevas Bustamante Street
Hato Rey, PR 00918
787-362-0811
rebollolaw@gmail.com

### <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on February 24, 2025  the foregoing document was electronically filed with the Clerk of the Court using CM/ECF

    /s/ Silvia B. Piñera-Vazquez
Silvia B. Piñera-Vazquez, Esq.
