UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA

v.                                                            Case No. 25-mc-00068-FAB

JUAN CARLOS REYNOSO

### UNITED STATES' OPPOSITION TO DEFENDANT'S AMENDED MOTION TO QUASH SERVICE OF SEIZURE WARRANT

I.  INTRODUCTION

In defendant Juan Carlos Reynoso's Amended Motion to Quash Service of the Seizure Warrant (Dkt. No. 8), he argues that the seizure warrant issued in this District on January 31, 2025 (the "Seizure Warrant") was improperly served and violates his rights under the Fifth Amendment. Neither argument has merit.

*First,* Mr. Reynoso argues that the Seizure Warrant was improperly served under Federal Rule of Criminal Procedure 41 because it was served by government counsel, as opposed to a law enforcement officer. Mr. Reynoso waived this argument because his counsel agreed in writing to accept service of the Seizure Warrant from government counsel. Even if this argument were not waived, nothing in Rule 41 prohibits government counsel from serving (as opposed to executing) a seizure warrant. Moreover, quashing the Seizure Warrant would be inappropriate where the purpose of service (to provide notice to the owner or custodian of the assets subject to seizure) indisputably occurred here before any seizure.

*Second*, Mr. Reynoso has failed to articulate a viable claim under the Fifth Amendment. He never explains why compliance with the Seizure Warrant would potentially incriminate him. Instead, he vaguely gestures at the Fifth Amendment. He also improperly asserts a blanket

1

invocation against the various parts of the Seizure Warrant, including parts that have no apparent nexus to any Fifth Amendment claim, whereas the Fifth Amendment must be asserted with particularity vis-à-vis each item. For example, he does not explain how the Fifth Amendment allows him to "obstruct, impede or interfere with the seizure of the SUBJECT ASSETS"—which was prohibited by the Seizure Warrant.

Finally, even if Mr. Reynoso could overcome these hurdles, the foregone-conclusion exception to the Fifth Amendment would defeat his invocation of the privilege. Mr. Reynoso's compliance with the Seizure Warrant would give the Government no new information that it does not already possess regarding the existence, location, authenticity, and origins of the 119.65 Bitcoin—all of which can be established by the immutable, public blockchain of Bitcoin transactions. Moreover, the Government can already establish Mr. Reynoso's possession, custody or control of the 119.65 Bitcoin via evidence obtained as a result of previously executed federal search warrants on his electronic devices and Apple account, combined with evidence from the blockchain.

Accordingly, based on the facts and legal authority discussed further below, the Government asks the Court to deny Mr. Reynoso's motion.

## II.     FACTUAL BACKGROUND

The Government incorporates by reference here the factual background in its Motion to Hold Juan Carlos Reynoso in Contempt of the January 31, 2025 Warrant to Seize Property Subject to Forfeiture. (Dkt. No. 1 at pp. 2-6)

## III.    ARGUMENT

### A. <u>The Seizure Warrant Was Proper.</u>

The Seizure Warrant required the following: (1) the Government to seize 119.65 BTC

currently stored on the wallet with root address starting bc1qd0 (the "Subject Assets"); (2) "JUAN CARLOS REYNOSO shall not obstruct, impede or interfere with the seizure of the SUBJECT ASSETS"; (3) "The SUBJECT ASSETS must be transferred, within 24 hours from the date of service of this seizure warrant, to the following Government-controlled address: bc1q9mv775udnfza5ccrgg2cvh73fj7sscvxm2er2h." (Dkt. No. 1-1)  Mr. Reynoso has made no claim that the first provision was improper, and the remaining two provisions were likewise appropriate and all of which were authorized by the court.

The Seizure Warrant includes language that prohibited Mr. Reynoso from obstructing, impeding or interfering with the seizure of the property.  Mr. Reynoso fails to explain why such language is legally flawed; it is not.  In fact, federal law also prohibits interference with a seizure warrant, including "any action, for the purpose of preventing or impairing the Government's lawful authority to take such property into its custody or control."  18 U.S.C. § 2232.

Moreover, courts can require, via a seizure warrant, the holder of assets to produce them. *See, e.g,. United States v. Byrd*, 153 F. Supp. 3d 851, 852 (D. Md. 2015) & supplemental order at 1:14-cr-00186-RDB (Dkt. No. 264) (D. Md. Jan. 4, 2016) (ordering law firm to comply with seizure warrant and surrender funds to U.S. Marshals Service).  Cryptocurrency exchanges and other holders of assets regularly cooperate with the Government to transfer assets pursuant to seizure warrants.  For example, when a seizure warrant is issued for funds held at a bank, federal agents do not rummage through the bank's assets to locate the ones at issue.

### B. Service of the Seizure Warrant Was Proper under Fed. R. Crim. P. 41.

Mr. Reynoso argues ]that service of the Seizure Warrant was improper because (1) "attorneys for the government are not authorized to execute warrants," and (2) "service of process [was] obtained under false pretenses."  (Dkt. No. 8 at pp. 8-9 (capitalization omitted))  Neither argument has merit.

*First*, the Government properly served the Seizure Warrant.  Until recently, this was also the position of Mr. Reynoso's counsel, who had agreed in writing to accept the Seizure Warrant from government counsel via email.  In particular, on January 31, 2025, Mr. Reynoso's counsel wrote to government counsel the following: "I am authorized to accept the above-captioned Seizure Warrant for Assets on behalf of my client, Juan Carlos Reynoso. Please email me the warrant at your earliest convenience."  (Dkt. No. 1-2)   Government counsel responded promptly to Mr. Reynoso's lawyer as follows: "Please find attached the warrant, which you have agreed to accept on behalf of your client."  (Dkt. No. 1-3)  In light of the agreement among the parties that Mr. Reynoso's counsel was authorized to accept service of the Seizure Warrant on behalf of his client from government counsel, and in light of Mr. Reynoso's concession in his motion that "counsel accepted service" (Dkt. No. 9 at p. 10), Mr. Reynoso has waived his argument to the contrary.  *See Marnavi SpA v. Keehan,* No. CIV. 08-00389-SLRLPS, 2010 WL 1499583, at *7 (D. Del. Apr. 14, 2010) (finding that party had waived "insufficiency of service defense" where defendant had agreed via court-ordered stipulation to accept service via mail to counsel).

Assuming, *arguendo*, that Mr. Reynoso did not waive his argument regarding insufficient service, it is legally wrong.  Nothing in Rule 41 prohibits a government attorney from serving a warrant.  Mr. Reynoso argues that "government attorneys are not authorized to *execute* warrants and thus the *service* of process is invalid.  Warrants may only be *executed* by authorized federal officers and as this warrant was not, *service* must be quashed."  (Dkt. No. 8 at p. 8 (emphasis added))  But that argument improperly conflates *service* (providing notice of the warrant) with *execution* (accomplishing the seizure of the property).  Often, these are done simultaneously: such as when an officer serves a person with a warrant to seize a vehicle, which the officer promptly accomplishes.

But service and execution are legally distinct processes and need not be simultaneous.  *See,*

*e.g.,* Fed. R. Crim. P. 41(f)(2) (allowing for "executing a tracking device warrant," followed by "serv[ing] a copy of the warrant" "[w]ithin 10 days after the use of the tracking device has ended"); 18 U.S.C. § 3103a(b)(1) (allowing delay of "notification" of "the execution of the warrant" where such notice "may have an adverse result").

The purpose of providing notice of the seizure warrant is to allow the owner to seek appropriate remedies. *See City of W. Covina v. Perkins*, 525 U.S. 234, 240 (1999) ("[W]hen law enforcement agents seize property pursuant to warrant, due process requires them to take reasonable steps to give notice that the property has been taken so the owner can pursue available remedies for its return."). Here, there is no dispute that Mr. Reynoso received notice of the seizure warrant from his counsel. This was accomplished *before* the property was attempted to be seized.[1] Moreover, Mr. Reynoso's counsel indicated that he would pursue legal remedies in response to the Seizure Warrant. (Dkt. No. 1-5 (email referring to "filing a motion to quash the warrant shortly"). There is no disagreement that Mr. Reynoso received actual notice of the Seizure Warrant; and there is no claim that anyone but a law enforcement officer has attempted to enforce it. Mr. Reynoso's arguments on these points therefore are inapposite.

Mr. Reynoso has cited no case—and the Government has found none—in which a court quashed a seizure warrant where government counsel served it on a represented party's counsel pursuant to a written agreement. In *State v. Watson,* 227 S.W.3d 622 (Tenn. Crim. App. 2006), the Court analyzed the propriety of the local government's service of a search warrant on defense counsel (without any stipulation among counsel regarding service) under a state-law analog to Fed. R. Crim. P. 41. The state Court of Criminal Appeals wrote as follows:

---

[1] As a result of Mr. Reynoso's failure to comply with the Seizure Warrant (including his repeated movement of funds after service of the Seizure Warrant), the Government still has not been able to seize the Bitcoin authorized for seizure.

5

> The intent of Rule 41 is " 'to secure the citizen against carelessness and abuse in the issuance and execution of search warrants.' " *State v. Coffee*, 54 S.W.3d 231, 233 (Tenn. 2001) (quoting *Talley v. State*, 208 Tenn. 275, 345 S.W.2d 867, 869 (Tenn. 1961)). The purpose of providing notice to the owner of seized property is to notify the owner of the source of the seizure so that the owner can pursue available remedies for its return. *City of West Covina v. Perkins*, 525 U.S. 234, 240, 119 S.Ct. 678, 681, 142 L.Ed.2d 636 (1999). However, "the prevailing view is that noncompliance with ... [notice] does not compel exclusion of the evidence obtained pursuant to the warrant, at least absent prejudice to the defendant or a deliberate disregard of the notice provision." 2 Wayne R. LaFave, *Search and Seizure*, § 4.12(b) (4th ed.2004) (footnote omitted).
>
> In this instance, the property had previously been seized and was in the possession of the Morristown Police. Notice was not deliberately disregarded but, instead, was served on the then recognized counsel for defendant Watson. In our view, defendant Watson suffered no prejudice; the service utilized was not an avoidance of process and constituted adequate notice to the property owner.

*Id*. at 645. This case presents an even stronger set of facts under which to find the adequacy of service, given the written agreement among counsel and given the wording of Rule 41 that does not prevent government counsel from serving a seizure warrant.

In addition to being unprecedented, Mr. Reynoso's argument would have negative consequences in practice. Under its logic, law enforcement officers would be required to locate and serve represented parties, even when the parties' counsel is willing to accept service and to thereby avoid parties being served at their home, at work, or in public by federal agents.

*Second*, Mr. Reynoso incorrectly argues that the service was "obtained under false pretenses" because government counsel did not orally explain the contents of the Seizure Warrant to defense counsel during a phone call. (Dkt. No. 8 at p. 9) Putting aside Mr. Reynoso's failure to articulate anything actually false about the pretenses, it is undisputed that Mr. Reynoso's counsel received a copy of the Seizure Warrant, which clearly explained its requirements. And nothing in the law, the federal rules, or local rules require an oral recitation of a seizure order upon service. Moreover, government counsel—after serving the Seizure Order—twice emailed Mr. Reynoso's counsel to remind him of the obligations under the Seizure Warrant. *See* Dkt. No. 1-4 ("This is to

confirm that the Subject Assets were not transferred to the Government wallet specified in the warrant within the time frame ordered by the Court."); Dkt. No. 1-6 ("Please note that we consider any dissipation by Mr. Reynoso of the SUBJECT ASSETS to be in violation of the order not to 'obstruct, impede or interfere with the seizure of the SUBJECT ASSETS.' ").

Consequently, the Court should conclude that Mr. Reynoso has waived his objection to service and that, in any event, the government properly effected service of the Seizure Warrant upon Mr. Reynoso's counsel pursuant to a written agreement.

### C. The Seizure Warrant Does Not Violate Mr. Reynoso's Fifth Amendment Rights.

The Fifth Amendment privilege is "a bar against compelling 'communications' or 'testimony.'" *Schmerber v. California*, 384 U.S. 757, 764 (1966). It "does not independently proscribe the compelled production of every sort of incriminating evidence but applies only when the accused is compelled to make a testimonial communication that is incriminating." *Fisher v. United States*, 425 U.S. 391, 408 (1976).

"To qualify for the Fifth Amendment privilege, a communication must be testimonial, incriminating, and compelled." *Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt County*, 542 U.S. 177, 189 (2004) (citing *United States v. Hubbell*, 530 U.S. 27, 34-38 (2000)). The burden of establishing these elements falls on the individual who asserts the privilege. *United States v. Hubbell*, 167 F.3d 552, 567 (D.C. Cir. 1999) (requiring proponent of privilege to make "a showing of: i) the compulsion; ii) of testimony; iii) that incriminates"), *aff'd*, 530 U.S. 27.

Mr. Reynoso's invocation of the Fifth Amendment fails for at least three reasons.

*First,* Mr. Reynoso briefly argues that compliance with the Seizure Warrant would potentially incriminate him because it "demands that Mr. Reynoso prove he has the authority to control the bitcoin wallet where the subject assets are allegedly stored and subsequently take action

7

to transfer the property"[2] (Dkt. No. 8 at p. 12); it certainly does not identify any communications or testimony he would be compelled to give. *See Hiibel,* 542 U.S. at 189. But Mr. Reynoso never explains why the transfer of the funds would potentially incriminate him. This cursory invocation is inadequate. As the First Circuit has explained, "the Fifth Amendment's prophylaxis is not available to all comers in all circumstances merely because they have the presence of mind to chant the accepted constitutional liturgy. To the contrary, the prospective witness must show at the very least that he is faced with some authentic danger of incrimination." *United States v. Castro*, 129 F.3d 226, 229 (1st Cir. 1997); *see also Hoffman v. United States*, 341 U.S. 479, 486 (1951) (The proponent of the privilege "is not exonerated from answering merely because he declares that in so doing he would incriminate himself—his say-so does not of itself establish the hazard of incrimination."); *Fisher*, 425 U.S. at 408 ("It is well established that the privilege protects against real dangers, not remote and speculative possibilities.").

*Second*, as the First Circuit has explained, "[t]he privilege cannot be invoked on a blanket basis." *Castro*, 129 F.3d at 229. The Seizure Warrant has different components, including requiring Mr. Reynoso not to "obstruct, impede or interfere with the seizure of the SUBJECT ASSETS." (Dkt. No. 1-1) Mr. Reynoso fails to explain with any particularity why each part of the Seizure Warrant, let alone its entirety, violates his rights under the Fifth Amendment. Accordingly, Mr. Reynoso's blanket invocation of the Fifth Amendment in response to the entirety of the Seizure Warrant is improper.

---

[2] Mr. Reynoso also asserts that the Seizure Warrant somehow requires counsel "not just to accept service on his client's behalf, but rather to enlist him to direct the client into assisting the government in its efforts to seize the assets." (Dkt. No. 8 at p. 12) This argument's import is unclear since the Seizure Warrant does not require Mr. Reynoso's counsel to do anything and his agreement to accept service only requires that he provide the Seizure Warrant to Mr. Reynoso.

*Third*, even if Mr. Reynoso made a sufficiently detailed and justified invocation of the Fifth Amendment, so as to invoke the act-of-production doctrine, the foregone-conclusion exception to that doctrine applies. When "[t]he existence and location of the papers are a foregone conclusion and the [petitioner] adds little or nothing to the sum total of the Government's information by conceding that he in fact has the papers," production does not run afoul of the Fifth Amendment. *Fisher*, 425 U.S. at 411,

In *Fisher*, the Supreme Court held that the contents of documents that were prepared by a third party (or were business records voluntarily prepared by the summoned taxpayer) did not represent compelled testimony and, therefore, were not privileged. 425 U.S. at 409-10. The Supreme Court later distilled *Fisher's* analysis to require that courts weighing a claim of act-of-production privilege examine whether an individual's compliance would establish " 'that the papers existed, were in his possession or control, and were authentic.' " *Hubbell*, 530 U.S. at 36 (quoting *Doe v. United States*, 487 U.S. 201, 209 (1988)). Each of these three prongs is met in this case, as explained more fully below.

1. **The Government Can Establish with Reasonable Particularity the Existence and Location of "119.65 BTC currently stored on the wallet with root address bc1qd02m2fgh82dcefymtpq3mxxqvydz29rfcgdgac"**

To satisfy *Fisher*'s first prong, the Government need only demonstrate "with reasonable particularity that it knows of the existence and location" of the requested item to establish a foregone conclusion. *In re Grand Jury Subp. Duces Tecum Dated Oct. 29, 1992*, 1 F.3d 87, 93 (2d Cir. 1993) (internal quotation marks omitted); *accord In re Grand Jury Subpoena Duces Tecum Dated March 25, 2011*, 670 F.3d 1335, 1344 n.20 (11th Cir. 2012) ("Where the location, existence, and authenticity of the purported evidence is known with reasonable particularity, the contents of the individual's mind are not used against him, and therefore no Fifth Amendment

protection is available."); *United States v. Ponds*, 454 F.3d 313, 320-21 (D.C. Cir. 2006) (adopting "reasonable particularity" standard).

Here, the existence and location of the Bitcoin subject to the Seizure Warrant are a foregone conclusion because each Bitcoin transaction is recorded on an immutable, public ledger, as demonstrated by the specifically identified location and amount of Bitcoin targeted for seizure in the warrant. As one court recently explained:

> Although bitcoin transactions are anonymous in the sense that each transaction is identified only by lengthy sets of numbers and letters representing the sending address(es), the receiving address(es), and the transaction ID(s), they are, at the same time, public in the sense that the amount, timing, sending address(es), and receiving address(es) of every transaction is recorded on the blockchain, which is a decentralized, immutable, public ledger available to anyone with an interest in looking. As result, bitcoin transactions are both uniquely anonymous and uniquely public. … [A] sender would need the "private key," akin to a password, for each of the sending addresses to effectuate [a] transfer.

*United States v. Sterlingov*, 719 F. Supp. 3d 65, 68 (D.D.C. 2024). Moreover, "[i]ndividual bitcoins, and fractions thereof, apparently are uniquely identifiable."[3] *United States v. Approximately 69,370 Bitcoin,* No. 20-CV-07811-RS, 2022 WL 2755353, at *2 (N.D. Cal. July 14, 2022), *aff'd sub nom. United States v. Buckley*, No. 22-16248, 2023 WL 5319260 (9th Cir. Aug. 18, 2023)

In particular, here, the blockchain offers immutable, public evidence of the existence of at least 119.65 Bitcoin at root address bc1qd02m2fgh82dcefymtpq3mxxqvydz29rfcgdgac ("address bc1qd0") when the Seizure Warrant was issued. None of this requires any testimony from Mr. Reynoso; nor does it require Mr. Reynoso to produce anything.

---

[3] As a result of their uniquely identifiable nature, the Government is able to trace the 119.65 Bitcoins from root address bc1qd0 to the current locations where Mr. Reynoso has sought to hide the Bitcoin.

**2. The Government Can Establish with Reasonable Particularity That the 119.65 Bitcoin Were in Mr. Reynoso's Possession, Custody, or Control**

For the second prong, Mr. Reynoso's possession, custody, or control over the documents need be demonstrated only with "reasonable particularity." *October 29*, 1 F.3d at 94. The Government's burden here does not replace Mr. Reynoso's burden to assert any defense of non-possession through "credible" evidence. *United States v. Lawn Builders of New Eng., Inc.*, 856 F.2d 388, 393 (1st Cir. 1988); *United States v. Huckaby*, 776 F.2d 564, 567 (5th Cir. 1985).

However, as explained in the attached declaration (Ex. A), which includes definitions of technical terms, there is ample evidence that establishes, with more than reasonable particularity, Mr. Reynoso's possession, custody or control of the 119.65 Bitcoin at address bc1qd0. This includes the following:

- In June 2024, a laptop, iPhones, and a hardware wallet (of the brand "Ledger") were seized from Mr. Reynoso pursuant to a federal search warrant. (Ex. A ¶ 4) A hardware wallet helps to ensure that only the person who is in physical possession of the hardware wallet (and therefore has access to the private keys stored on that wallet) can transfer Bitcoin from the associated virtual currency address.

- A screenshot found on Mr. Reynoso's laptop of "Ledger" software records a transfer of approximately 125 Bitcoin to address bc1qev3fz3ryfsvfx677a37h6540ds6ull0sap6drv ("address bc1qev") on August 7, 2023. (Ex. A ¶ 5)



- As corroborating evidence that links Mr. Reynoso to the address bc1qev, approximately 125 BTC detailed on a "Ledger" receipt found on Mr. Reynoso's Apple account reflect these same transactions of 124.999 BTC and 0.001 BTC on August 7, 2023. (Ex. A ¶ 7)

- Between August 2023 and January 2025, no funds entered or left address bc1qev. (Ex. A ¶ 10) Consequently, the funds that Mr. Reynoso received at that address stayed there.

- A document, dated March 6, 2024, located on Mr. Reynoso's Apple account indicated that Mr. Reynoso controls the address bc1qa2kqkm7fwzr8s0jtfrn8ggsg6g4nuql8esghnz ("address bc1qa2"). In particular, "Juan Carlos Reynoso" signed a letter in which he stated "I also certify that I am the holder of the wallet provided for the transfer. bc1qa2kqkm7fwzr8s0jtfrn8ggsg6g4nuql8esghnz" (Ex. A-1)

- When a person initiates a transaction from a Bitcoin address, they must spend the entire amount of Bitcoin in that address. (Ex. A ¶3(b)) They do not have the option of transferring only a portion of the Bitcoin. This is similar to how a person spending a $100 bill must spend the

entirety of the bill, even when purchasing a $30 item, and then receives change. In the case of Bitcoin, the "spend amount" and "change amount" are sent to different addresses. *Id*. On January 29, 2025, address bc1qev (controlled by Mr. Reynoso) sent approximately 125 BTC to two addresses, consisting of the following: 124 BTC to the successor address bc1qd02m2fgh82dcefymtpq3mxxqvydz29rfcgdgac ("address bc1qd0"),[4] and 1 BTC to the separate address bc1qa2, also claimed by Mr. Reynoso. (Ex. A ¶ 9)

In summary, Mr. Reynoso's possession, custody and control of the 119.65 Bitcoin at address bc1qd0 is established with reasonable particularity by: (1) a Ledger hardware wallet (which contains unique private keys) seized from Mr. Reynoso, together with Ledger software found on his computer, that reflected a transaction of approximately 125 BTC in August 2023 at address bc1qev; (2) a corroborating Ledger receipt for this same transaction found in his Apple account; (3) the lack of transfers into/out of address bc1qev between August 2023 and January 2025 (*i.e.,* the 125 BTC remained at address bc1qev, associated with Mr. Reynoso); (4) the transfer from address bc1qev on January 29, 2025 of: (a) 1 BTC to address bc1qa2, which address was claimed by Mr. Reynoso in a letter from March 2024 found in his Apple account; and (b) 124 Bitcoin to address bc1qd0, which was a successor address to bc1qev for the remainder of the bc1qev funds; and (5) the characteristic of the Bitcoin network that when a person initiates a transaction from a Bitcoin address (such as address bc1qev), they must spend the entire amount of Bitcoin in that address, even if those amounts are sent to different addresses (such as address bc1qa2 and address bc1qd0). This evidence establishes Mr. Reynoso's movement of the Bitcoin at issue among wallets over which he has possession, custody and control, including address bc1qd0, which was the subject of the Seizure Warrant.

---

[4] The Seizure Warrant sought less than the entirety of the 124 BTC in address bc1qd0.

3. **The Government Can Establish with Reasonable Particularity the Authenticity of the 119.65 Bitcoin**

For the third prong and as explained by the Second Circuit, the "implicit authentication occurs when an individual who receives a summons demanding production of documents complies with the summons and thereby implicitly testifies that he owns or at least possesses the documents." *United States v. Fox*, 721 F.2d 32, 38 (2d Cir. 1983). But, where the documents can be authenticated by some other means, the individual's production is no longer a " 'necessary link to incriminating evidence contained in [the documents].' " *October 29,* 1 F.3d at 93 (holding that production of document was not authenticating because it had previously been produced) (quoting *Fox*, 721 F.2d at 38). For example, where bank records "could be independently authenticated by banking officials," an individual's act of producing such records does not constitute compulsory authentication in violation of the Fifth Amendment. *United States v. Bright*, 596 F.3d. 683 693 (9th Cir. 2010); *see also United States v. Rue,* 819 F.2d 1488, 1494 (8th Cir. 1987) (enforcing summons based, in part, on a finding that "the authenticity of patient records can be established independently, without reference to [the petitioner's] act of producing them").

With Bitcoin, the authenticity is established by the immutable, public ledger: not by Mr. Reynoso's actions with respect to the 119.65 Bitcoin. *See Sterlingov*, 719 F. Supp. 3d 65, 68 ("every transaction is recorded on the blockchain, which is a decentralized, immutable, public ledger available to anyone with an interest in looking"). Consequently, the Government has independent means of establishing the authenticity of the Bitcoin at issue without needing anything from Mr. Reynoso.

In sum, even if Mr. Reynoso could articulate a valid Fifth-Amendment argument—which he has not—the foregone-conclusion exception would apply. *See United States v. Apple MacPro Computer,* 851 F.3d 238, 249 (3d Cir. 2017) (finding that foregone conclusion exception applied

and affirming civil contempt ruling against defendant who refused to decrypt electronic devices; defendant held in custody); *United States v. Burns*, No. 1:18CR492-1, 2019 WL 2079832, at *10 (M.D.N.C. May 10, 2019)  (ordering defendant "to decrypt the Device to effectuate and/or to avoid frustration of the Warrant" and holding that the " 'forgone conclusion' doctrine defeats [defendant's] assertion of a Fifth Amendment privilege against entry of (and compliance with) such a decryption order."); *Matter of Search of a Residence in Aptos, California 95003,* No. 17-MJ-70656-JSC-1, 2018 WL 1400401, at *9 (N.D. Cal. Mar. 20, 2018) ("the Court finds that the government has shown with at least reasonable particularity—as to each device—that it is a foregone conclusion that: (1) Mr. Spencer owned or possessed each device and thus owned or possessed the encrypted files, and can fully-decrypt each device; (2) that the files exist; and (3) that the files are authentic.").

## IV.     CONCLUSION

For the foregoing reasons, the Court should deny Mr. Reynoso's Motion to Quash Service of Seizure Warrant.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 28th day of February 2025.

        W. STEPHEN MULDROW
        United States Attorney

        GLENN S. LEON
        Chief, Fraud Section
        United States Department of Justice

By:   /s/ *Jonathan Gottfried*
        Assistant United States Attorney
        U.S. Attorney's Office for the
        District of Puerto Rico
        Torre Chardón, Suite 1201
        350 Carlos Chardón Street
        San Juan, PR 00918
        (787) 282-1889
        Jonathan.Gottfried@usdoj.gov

        Ariel Glasner
        Trial Attorney
        U.S. Department of Justice
        Criminal Division, Fraud Section
        1400 N.Y. Ave. NW
        Washington, DC 20530
        (202) 598-2522
        Ariel.Glasner@usdoj.gov

        Tamara Livshiz
        Trial Attorney
        U.S. Department of Justice
        Criminal Division, Fraud Section
        1400 N.Y. Ave. NW
        Washington, DC 20530
        (202) 674-5670
        Tamara.Livshiz@usdoj.gov

## CERTIFICATE OF SERVICE

I, Jonathan Gottfried, Assistant United States Attorney for the District of Puerto Rico, hereby certify that a copy of the foregoing has been sent via email to counsel for Juan Carlos Reynoso.

                                                          By:    s/ Jonathan Gottfried
                                                                       Jonathan Gottfried