**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| **Plaintiff,** | |
| **v.** | **Miscellaneous No. 25-068** (FAB) |
| JUAN CARLOS REYNOSO, | |
| **Defendant.** | |

**OPINION AND ORDER**

BESOSA, Senior District Judge.

On January 31, 2025, Magistrate Judge Héctor Ramos-Vega issued a warrant to seize property subject to forfeiture (hereinafter, "warrant"). <u>See</u> Case No. 22-077, Docket No. 4. Plaintiff United States requests that the Court hold defendant Juan Carlos Reynoso ("Reynoso") in civil contempt for violating this warrant. (Docket No. 1.) Reynoso moves to quash, however, contending that the warrant contravenes Federal Rule of Criminal Procedure 41 and the Fifth Amendment of the United States. The Court **GRANTS** the United States' motion, and **HOLDS JUAN CARLOS REYNOSO IN CIVIL CONTEMPT OF COURT**. Reynoso's motion to quash is **DENIED**.

## I.  Background

The following facts are not in dispute.[1]  Magistrate Judge Ramos issued a warrant to seize property subject to forfeiture on January 31, 2025 pursuant to 18 U.S.C. §§ 981-82, and 21 U.S.C. § 853(f).  Case No. 22-077, Docket No. 4; see United States v. Gorski, 880 F.3d 27, 41 (1st Cir. 2018) ("Although section 981 pertains to civil forfeiture, section 2461(c) provides that the government may seek criminal forfeiture whenever civil forfeiture is authorized in connection with a criminal offense."); United States v. $16,072.00 in United States Currency, 374 F. Supp. 3d 205, 208 (N.D.N.Y. 2019) ("[If] the government demonstrates that a protective order is insufficient to assure the property's availability for forfeiture [a court may issue] a criminal seizure warrant under 21 U.S.C. section 853(f).").

This warrant provides that the subject assets include: "119.65 [bitcoin ("BTC")] currently stored on the wallet with root address bc1qd02mfgh82dcefymptq3mxxqvydz29rfcgdgac" (approximately $12,650,785.94 in United States currency).  Id. at p. 1.  Moreover, the warrant states that:

> JUAN CARLOS REYNOSO shall not obstruct, impede or interfere with the seizure of the SUBJECT ASSETS.
>
> The SUBJECT ASSETS must be transferred, within 24 hours from the date of this seizure warrant, to the following

---

[1] Because the facts are not in dispute, a hearing is not necessary.

Government-controlled address:  bc1q9mv775udnfza5ccrgg2 cvh73fj7sscvxm2er2h.

Id.  These provisions appear verbatim on both pages of the two-page warrant.  Id. at pp. 1-2.

## A.    The Bitcoin System of Exchange

Bitcoin is a form of "virtual currency."  United States v. Gratkowski, 964 F. 3d 307, 309 (5th Cir. 2020).[2]  Each Bitcoin user is assigned an "address" akin to a bank account, consisting "of a long string of numbers."  Id.  Bitcoins are "stored in repositories called 'wallets.'"  Scott R. Bowling, Understanding Bitcoin – Its Developing Regulatory Framework and Its Risks in Distressed Situations, 29 J. Tex'n F. Inst. 33 (2015).  A wallet is "accessible by its owner through the use of a public key in combination with a key known only to the owner."  Id.; see David E. Kronenberg and Daniel Gwen, Bitcoins in Bankruptcy: Trouble Ahead for Investors and Bankruptcy Professionals?, 10 Pratt's J. of Bankr. L. 10-2-II (2025) ("If a user forgets or misplaces his or her private key, the bitcoins at the digital address will be forever dormant, since the Bitcoin system will not validate a

---

[2]Bitcoin is generally known as a "global currency and means of exchange," but the Internal Revenue Service has determined that this "currency" will "be taxed as property analogous to stocks and other investments."  Scott A. Wiseman, Property or Currency?  The Tax Dilemma Behind Bitcoin, 206 Utah L. Rev. 417, 429-39 (2016).  The property-currency dichotomy does not alter the disposition of this litigation.  "The capitalized word 'Bitcoin' is typically used to refer to the currency system as a whole, but the un-capitalized work 'bitcoin' refers to the units of virtual currency."  Catherine M. Christopher, Why on Earth Do People Use Bitcoin?, 2 Bus. & Bankr. L. J. 1, 2 (2014).

transaction without the matching private key."). Private keys reside in "hot" or "cold" locations. Debbie Hoffman and Anna Mouland, Bequeathing Bitcoin: Storing and Transferring Cryptocurrency Upon Death, 38 PROBATE & PROPERTY 20, 21 (2024). Private keys placed on the "user's computer or with a centralized wallet" are "hot," and "can be hacked remotely if there is an internet connection to the computer." Id. In contrast, "cold" storage "is not connected to the internet and cannot be accessed remotely." Id. Examples of cold storage include "writing a private key down on a piece of paper, using a cold storage hardware wallet (a small USB type device), or memorizing a private key." Id.

Transfers from one wallet to another are memorialized on "Bitcoin's public network, known as a blockchain." Gratkowski, 964 F.3d at 309. This ledger sets forth the amount of bitcoin transferred between "wallets," the sender's address, and the receiver's address. Id. (holding that Bitcoin users have no expectation of privacy "in [their] information on the blockchain"). Civil forfeiture of bitcoin is a relatively new development in the law. See Jonathan Lane, Bitcoin, Silk Road, and the Need for a New Approach to Virtual Currency Regulation, 8 CHARLESTON L. REV. 511, 512 (2014) ("When the Drug Enforcement Administration announced that it had seized 11.02 bitcoins from

Charleston, South Carolina hospitality worker Eric Daniel Hughes
in May 2013, the first ever government seizure of its kind, few
outside the Bitcoin network could have foreseen the legal
implications that followed.").  Law enforcement officers may seize
bitcoin placed in cold storage by accessing the physical
manifestation of the appurtenant private key.  Max Raskin, Realm
of the Coin: Bitcoin and Civil Procedure, 20 FORDHAM J. COP. & FIN.
L. 969, 1004 ("If there is a private key sitting in the safety
deposit box in a court's jurisdiction, the court can simply send
a sheriff into the bank with an order to seize the private key,
just as the FBI did by seizing the Silk Road bitcoins.") (citing
United States v. Ulbricht, 31 F. Supp. 3d 540, 569 (S.D.N.Y. 2014).

On June 30, 2024, agents from the Federal Bureau of
Investigation seized a Lenovo laptop belonging to Reynoso.  (Docket
No. 18, Ex. 1 at p. 5.)  His laptop contained software for a
"Ledger hardware wallet."  Id.  This wallet is a "physical device
that stores [a bitcoin owner's] private keys," activated by
entering a PIN code and seed phrase.  Id. at p. 4.

**B.    Reynoso Emptied his Bitcoin Wallet Immediately After his
Defense Counsel Received the Warrant**

At approximately 1:00 p.m. on January 31, 2025,
Assistant United States Attorney Jonathan Gottfried ("Gottfried")
called Walter Reynoso, counsel for Juan Carlos Reynoso.  (Docket

No. 1, Ex. 2.)   Walter Reynoso answered his phone while at a
"Grandparents Day" event with his family.  (Docket No. 14 at p. 6.)
According to defense counsel, AUSA Gottfried informed him that
"[the United States] had a seizure warrant for assets and inquired
if he would accept service on behalf of [his client]."   Id. at
pp. 6-7.

> Defense counsel subsequently "agreed to accept service
of the warrant."  Id. at p. 7.  He sent ASUA Gottfried the following
e-mail:

> Good afternoon, Jonathan,
>
> Pursuant to our conversation, **I am authorized to accept the above-captioned Seizure Warrant for Assets on behalf of my client, Juan Carlos Reynoso**.  Please e-mail me the warrant at your earliest convenience.
>
> Best Regards, Walter

(Docket No. 1, Ex. 2 at p. 1.)  (emphasis added).   Five minutes
later, AUSA Gottfried sent "the warrant, which [counsel] agreed to
accept on behalf of [his] client."  (Docket No. 1, Ex. 3 at p. 1.)
Walter Reynoso remained with his family at his grandson's school
"as he had previously informed government counsel of this
scheduling conflict when they spoke on the phone."  (Docket No. 14
at p. 8.)   Because of Grandparents Day and other social
"commitments," Walter Reynoso "did not [immediately] view the
warrant," a document readily available in his inbox.  Id.

While defense counsel enjoyed the weekend with family, Reynoso expeditiously transferred 119.65 BTC from the wallet identified in the seizure warrant to various accounts on the blockchain. Less than two hours after the phone conversation between defense counsel and AUSA Gottfried, Reynoso moved the subject assets to another Bitcoin wallet. (Docket No. 1 at p. 7.) With intuition more accurate than the Oracle at Delphi, Reynoso again transferred the subject assets to a third Bitcoin wallet on February 1, 2025 just after midnight. Id. He then sent the subject assets to a fourth and fifth Bitcoin wallet. Id. These frenzied transfers occurred within the 24-hour timeframe to comply with the seizure warrant. Id.

Reynoso did not move to quash the warrant, nor did he retain the subject assets in the wallet subject to seizure.[3] At best, these transfers are the result of a serendipitous happenstance: a coincidence that inadvertently rendered the seizure warrant ineffectual. The temporal proximity between notice of the warrant and movement of the subject assets strongly

_____

[3] Pursuant to 18 U.S.C. § 2232: "Whoever, before, during, or after any search for or seizure of property by any person authorized to make such search or seizure, knowingly destroys, damages, wastes, disposes of, transfers, or otherwise takes any action, or knowingly attempts to destroy, damage, waste, dispose of, transfer, or otherwise take any action, for the purpose of preventing or impairing the Government's lawful authority to take such property into its custody or control or to continue holding such property under its lawful custody and control, shall be fined under this title or imprisoned not more than 5 years, or both." 18 U.S.C. § 2232.

suggests, however, that Reynoso attempted to obstruct justice by evading a duly issued order of the Court.

On Saturday, February 1, 2025 at 3:08 p.m., AUSA Gottfried sent Walter Reynoso an e-mail to "confirm that the Subject Assets were not transferred to the Government wallet specified in the warrant within the time frame ordered by the Court." (Docket No. 1, Ex. 6 at p. 4.) This email elicited no response. According to defense counsel, he "opened the government's email [containing the warrant for the first time]" on Sunday February 2, 2025. (Docket No. 14 at p. 8.) Walter Reynoso acknowledged that the "24-hour time period for producing the 'subject assets' to the government had expired" by this point. Id. He waited another day to respond, however, by sending the following e-mail to AUSA Gottfried:

Good afternoon, Jonathan,

Early Thursday evening at 6:54 pm, you sent me a request as follows ". . . to talk at 1 PM tomorrow (Friday)? We wanted to discuss an update in the matter." Approximately an hour later, I informed you that I would be at my grandson's 1st grade Grandparents Day at his school on Friday, but would me time and confirmed the 1:00 pm meeting. Ten minutes later you replied by thanking me for making myself available and agreed to circulate an invite with a call-in number. I was hopeful that we could possibly discuss an immunity resolution.

On Friday afternoon at 1:00 pm, we had our conference call. You informed me that you did not want to take much of my time as you knew I was on a tight schedule (returning to spend the day with my grandson). You then

asked me if I would accept service on behalf of my client for a seizure warrant for certain assets. **I agreed to accept service of what I presumed was simply a copy of a warrant to be provided to my client.** You did not alert me during our conference that it was a time-sensitive matter, and you did not inform me that the warrant imposed any obligation on me or my client. As it was a Friday afternoon, I did not open the email immediately, because I had prearranged family commitments for the weekend.

Early Sunday morning, when I was on my way to bring food to the Chapman Partnership homeless shelter in Downtown Miami, I took the time (while stuck in the Miami Marathon traffic) to read my business emails. At that time, I noticed your Saturday email and read the warrant for the first time. By then, the time period had expired over a day prior, and I had not yet provided the warrant to my client.

We will be filing a motion to quash the warrant shortly. Based on these circumstances, we expect that the government will not take any legal action against my client until after receiving our Motion to Quash the Warrant.

Regards,

Walter

(Docket No. 1, Ex. 5 at p. 1.) (emphasis added). The United States then attempted to contact Walter Reynoso by phone, but the call went to voicemail. Id., Ex. 6 at p. 2. The next day, defense counsel sent the following e-mail:

Good afternoon,

I have been tied up all day. Attorney Silvia Pinera-Vázquez (copied on this email) has been retained as my co-counsel. We are working on a motion to quash the warrant. We are in the process of retaining local counsel, and we will file the motion as soon as we hire

local counsel.   Please include Silvia on all future
emails

Id. at p. 1.  AUSA Gottfried replied that same day, stating that

the United States "consider[s] any dissipation by Mr. Reynoso of

the SUBJECT ASSETS to be a violation of the order not to obstruct,

impede or interfere with the seizure of the SUBJECT ASSETS."  Id.

The United States subsequently requested that the Court

hold Reynoso in contempt on February 7, 2025, affording the

defendant ample opportunity to comply with the seizure warrant.  A

week later, Reynoso filed a motion to quash.  (Docket No. 8.)

As a preliminary matter, a motion to quash does not

negate or excuse contempt of court.  It is blackletter law that "a

contempt proceeding does not open to reconsideration the legal or

factual basis of the order alleged to have been disobeyed and thus

become a retrial of the original controversy."  Feldman v. Desmond,

Case No. 21-1798, 2022 U.S. App. LEXIS 28264, at *1-2 (1st Cir.

Oct. 6, 2022) (quoting United States v. Rylander, 460 U.S. 752,

756 (1983)); see Maness v. Myers, 49 U.S. 449, 457-58 (1975)

(noting that "even incorrect orders from courts ordinarily must be

obeyed until set aside"); Becton, Dickinson & Co. v. Food & Drug

Admin., 448 F. Supp. 776, 780 (N.D.N.Y. 1978) ("The criminal

justice system would be thrown back into a state of turmoil were

this Court to sanction a person's private determination of the

invalidity of a search warrant, and a subsequent refusal to peacefully abide by it."). Consequently, the merits of the motion to quash have no bearing on the request to hold Reynoso in civil contempt.

## II. The Motion to Quash

Reynoso moves to quash the seizure warrant for three reasons. (Docket No. 8.) First, he avers that the United States served notice of the warrant in violation of Federal Rule of Criminal Procedure 41 ("Rule 41"). Id. at p. 7. Second, he contends that defense counsel accepted service "under false pretenses." Id. Third, Reynoso purports that the warrant "violates [his] Fifth Amendment rights." Id. These arguments are unavailing.

### A. Federal Rule of Criminal Procedure 41

Because defense counsel accepted notice of the warrant without objection, Reynoso cannot now assert that the United States violated Federal Rule of Criminal Procedure 41. See Docket No. 1, Ex. 2. Accordingly, Reynoso has waived this argument. Furthermore, his reliance on a purported violation of procedure is misplaced. Rule 41 provides in pertinent part that:

> For a warrant to use remote access to search electronic storage media and seize or copy electronically stored information, the officer must make reasonable efforts to serve a copy of the warrant and receipt on the person whose property was searched or who possessed the information that was seized or copied.

Fed. R. Crim. P. 41(f)(1)(C).  A "federal law enforcement officer" is a "government agent (other than an attorney for the government) who is engaged in enforcing the criminal laws and is within any category of officers authorized by the Attorney General to request a search warrant."  Fed. R. Crim. P. 41(a)(2)(C).

Reynoso avers that the United States engaged in a "service of process ruse" by "[failing] to provide adequate notice."  (Docket No. 8 at p. 4.)  According to Reynoso, "government attorneys [*i.e.* AUSA Gotfried] are not authorized to execute search warrants and thus the service of process here is invalid."  Id. at p. 8.  The Court is unaware of, and the parties do not cite, any precedent standing for the proposition that inadequate "service of process" nullifies an otherwise valid warrant.

Rule 41 is devoid of any reference to "service of process" or "notice."  Indeed, "notice of the search and seizure is an effect of this rule, but it is not the rule's only purpose."  In re United States, 665 F. Supp. 2d 1210, 1221 (D. Or 2009).  The procedure set forth in Rule 41 "[informs the defendant] of the legality of the [seizure]" and constitutes "necessary [proof should he wish] to have property returned under Rule 41(g)."  Id. The e-mail sent by AUSA Gottfried containing the warrant satisfied both objectives.

Reynoso conflates execution with service of process. A law enforcement officer must execute a warrant, but Rule 41 sets forth no prohibition against service of process by a government attorney. Execution and service of process are distinct actions that need not occur simultaneously. See Fed. R. Crim. P. 41(f)(2) (permitting law enforcement officers to execute a "tracking device warrant," followed by "[serving a copy of the warrant . . . within 10 days after the use of the tracking device has ended"). That a "federal law enforcement officer" did not personally send this e-mail to defense counsel is no reason to quash the warrant. See United States v. Crumpton, 824 F.3d 593, 617 (6th Cir. 2016) ("Although the procedural steps enumerated in Rule 41 are important and should not be disregarded, they are ministerial and absent a showing of prejudice, irregularities in these procedures do not void an otherwise valid search.") (internal citation and quotation omitted). Accordingly, Reynoso's Rule 41 argument is meritless.

**B.    The "False Pretense" Allegations**

Reynoso faults the United States for defense counsel's failure to read a two-page document in a timely manner. He asserts that the "seizure warrant was served on woefully incomplete, if not false, pretenses and portrayed by the government on the Friday afternoon telephone call as a typical seizure warrant." (Docket No. 8 at p. 9.) Moreover, the United States allegedly displayed

a "lack of good faith" by "[failing] to inform counsel that the warrant required immediate action." Id. at p. 10.

This argument is divorced from reality. The United States contacted defense counsel to schedule a phone conversation at his convenience. (Docket No. 1, Ex. 2.) Immediately after this conversation, the United States sent Walter Reynoso an e-mail with the warrant for his review. Defense counsel's refusal to open this e-mail with sufficient time to comply with the warrant is an act of willful ignorance, not a surreptitious plot to deprive Reynoso of his property.

**C.  Alleged Violations of the Fifth Amendment**

Reynoso invokes the Fifth Amendment, setting forth two distinct challenges to the warrant. First, Reynoso contends that the warrant "seeks to improperly convert either [himself] or his counsel into a law enforcement agent to execute the warrant." (Docket No. 8 at p. 12.) Second, he argues that the warrant "demands that Mr. Reynoso prove he has the authority to control the bitcoin wallet where the subject assets are allegedly stored." Id.

The linchpin of Reynoso's first argument rests on a false premise: That this Court lacks the authority to compel compliance with the warrant. The Third Circuit Court of Appeals' decision in United States v. Apple Mac Pro Computer, 851 F.3d 238 (3rd Cir.

2016), is illustrative.  In this litigation, Delaware law
enforcement officers seized an Apple computer from defendant John
Doe's residence in furtherance of a child pornography
investigation.  Id. at 242.  This computer "had been protected
with encryption software," permitting only those in possession of
a "key" to decrypt data from the device.  Id.  Agents from the
Department of Homeland Security subsequently obtained a warrant to
search Doe's computer.  Id.  Doe "refused to provide the passwords
to decrypt the Apple [computer and] external hard drives."  Id.  A
magistrate judge then "issued an order pursuant to the All Writs
Act requiring Doe to produce [his Apple computer] in a fully
unencrypted state."  Id. at 243.  Like Reynoso, Doe argued that
this decryption order violated the Fifth Amendment; he also claimed
he "could not remember the passwords necessary to decrypt the hard
drives."  Id.  The district court held Doe in civil contempt,
"[remanding] him to the custody of the United States Marshals to
be incarcerated until he fully complies with the Decryption Order."
Id. at 244.

        On appeal, the Third Circuit Court of Appeals rejected
Doe's argument that the magistrate judge "lacked subject matter
jurisdiction to issue the Decryption Order under the All Writs
Act."  Id.  Because the magistrate judge "had subject matter
jurisdiction under Federal Rule of Criminal Procedure 41 to issue

a search warrant," it necessarily possessed the authority to "issue an order under the All Writs Act."  Id. (citing United States v. New York Tel. Co., 434 U.S. 159, 172 (1977) (holding that federal courts may issue All Writs Act orders "as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained"); see 28 U.S.C. § 1651(a) ("The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.").  Ultimately, Doe remained in civil confinement for four years for his refusal to comply with the encryption order.  See United States v. Apple Mac Pro Comp., 949 F.3d 102 (3rd Cir. 2020).

        The parallels between Reynoso and Doe are apparent.  Both defendants possess a proprietary "key" required to execute a warrant issued pursuant to Federal Rule of Criminal Procedure 41. The procedural posture of this litigation differs, however, because Magistrate Judge Ramos directed Reynoso to transfer the bitcoin in the seizure warrant (not by separate order).  Also, the seizure warrant does not specifically cite the All Writs Act.  The Court's subject matter jurisdiction is not contingent on proper citation, however, or the manner in which an order is issued.  It is beyond peradventure that Magistrate Judge Ramos possesses the

authority to "effectuate" the January 31, 2025 seizure warrant.
New York Tel. Co., 434 U.S. at 172; see United States v. Lavabit,
LLC, 749 F.3d 276, 293 (4th Cir. 2014) (affirming the imposition
of monetary sanctions where defendant refused to provide
encryption keys to federal law enforcement officers). Reynoso is
frustrating the seizure of 119.65 BTC by refusing to transfer the
subject assets, an act that requires minimal effort and time.
Consequently, his argument against the transfer mandate is
unpersuasive.

Reynoso's second argument fares no better than the
first. According to Reynoso, compliance with the warrant is a
form of self-incrimination. (Docket No. 8 at p. 12.) At bottom,
he argues that transfer of the bitcoin constitutes an admission of
ownership. Id. He cites United States v. Hubbell, 530 U.S. 27,
43 (2000), for the proposition that the "constitutional privilege
against self-incrimination protects [Reynoso] from being compelled
to answer questions designed to elicit" inculpatory information.
Id. at p. 11.

The Supreme Court has held, however, that the right
against self-incrimination remains intact if the location of
evidence subject to a warrant or subpoena is a "foregone
conclusion." Fisher v. United States, 425 U.S. 391, 411 (1975).
Essentially, when conceding ownership or possession "adds little

or nothing to the sum total of the Government's information . . . no constitutional rights are touched." Id.; see United States v. Stone, 976 F.2d 909, 911 (4th Cir. 1992) (affirming enforcement of subpoenas *duces tecum* because "Wujkowski's possession of the records is not disputed. As the owner of the house, it is a foregone conclusion that he would have the utility bills and rental records for the house"); United States v. Smith, 706 F. Supp. 3d 404, 408 (N.D.N.Y. 2023) ("[If] the Government can independently show that the phone belonged to the defendant and that the defendant knew the password, the foregone conclusion doctrine applies, and the Fifth Amendment is not violated by the act of compelled decryption."); Apple Pro Mac Computer, 851 F.3d at 248 (affirming an order compelling decryption in part because "any testimonial component of the production of the decrypted devices added little or nothing to the information already obtained by the Government"); In re Grand Jury Subpoena, Case No. 06-091, 2009 U.S. Dist. LEXIS 13006, at *9 (D. Vt. Feb. 19, 2009) (ordering the defendant to "provide an unencrypted version of the Z drive" pursuant to the foregone conclusion doctrine because the United States "knows of the existence and location of the Z drive and its files").

        The Court has reviewed the affidavit submitted in support of the seizure warrant, the declaration submitted by

Special Agent Alex Santiago-Montes, and the March 6, 2024 letter from Reynoso to the "Gentlemen of Futswap." Case No. 25-077, Docket No. 2, Ex. 1; Case No. 25-068, Docket No. 18, Exs. 1 and 2.). These documents establish that the bitcoin subject to seizure belongs to Reynoso. Transfer of the 119.65 BTC will reveal no additional information to law enforcement officers. Accordingly, the foregone conclusion doctrine is applicable: Transfer of the subject assets will not offend Reynoso's Fifth Amendment right against self-incrimination. Because Reynoso sets forth no reason to invalidate the seizure warrant, the motion to quash is **DENIED**.

### III. Civil Contempt

The United States requests that the Court hold Reynoso in civil contempt. (Docket No. 1.) The imposition of sanctions for civil contempt serves "to coerce present or future compliance with an order of the court." Rodríguez-Miranda v. Benin, 829 F.3d 29, 45 (1st Cir. 2016); United States v. Saccoccia, 433 F.3d 19, 27 (1st Cir. 2005). Sanctions also vindicate the authority of the Court, and compensate for "losses sustained by reason of the contemnor's acts." Goya Foods, Inc. v. Wallack Mgmt., Co., 290 F.3d 63, 78 (1st Cir. 2002). To prevail, the United States must demonstrate by clear and convincing evidence that: (1) Reynoso "had notice that he was within the order's ambit;" (2) the warrant was "clear and unambiguous;" (3) Reynoso "had the ability" to

transfer the 119.65 BTC; and that (4) he violated the warrant. Saccoccia, 433 F.3d at 27.  This Court possesses "wide discretion in its choice of sanctions."  Baella-Silva v. Hulsey, 454 F.3d 5, 12 (1st Cir. 2006) (citation omitted).

### A.   Reynoso Received Notice of the Seizure Warrant

Reynoso received notice of the warrant on January 31, 2025 after defense counsel accepted service on his behalf.  (Docket No. 1, Ex. 2.)  He has since moved to quash the warrant, retained local counsel, and responded to the United States' motion for sanctions.  (Docket Nos. 8 and 14.)  The warrant refers to Reynoso by name, removing any doubt that he falls "within the ambit of the order."  Saccoccia, 433 F.3d at 27.

### B.   The Warrant is Clear and Unambiguous

The Court must determine "whether [Reynoso] is able to ascertain from the four corners of the order precisely what acts are forbidden."  Saccoccia, 433 F.3d at 28.  The seizure warrant is clear and unambiguous.  Magistrate Judge Ramos identified the property subject to seizure and the location of these assets. (Docket No. 1, Ex. 1.)  The warrant also prohibits Reynoso from obstructing, impeding, or interfering with the seizure.  Id.  It also commands that he transfer the 119.65 BTC to a specific government-controlled wallet.  Id.  Reynoso's submissions to the Court establish that he understands what the warrant compels him

to do, eliminating any pretense of confusion. For instance, Reynoso acknowledges that the warrant requires him to transfer the 119.65 BTC. (Docket No. 14 at p. 5) (stating that the warrant "attempts to impose an affirmative obligation on Mr. Reynoso, to preserve and transfer property to the government").

### C.    Reynoso Has the Ability to Comply with the Warrant

Reynoso "is the owner" of the wallet identified in the warrant. (Docket No. 18, Ex. 2.) Accordingly, compliance is possible by transferring the 119.65 BTC to the government-controlled wallet. The transfer may be accomplished with Reynoso's Ledger hardware wallet. (Docket No. 18, Ex. 1 at p. 5.)

Reynoso emptied his Bitcoin wallet immediately after defense counsel received notice of the warrant. He cannot now claim that compliance is no longer feasible: Any difficulty in recovering the 119.65 BTC is self-inflicted. See, e.g., United States v. Three Crown Corp., 324 F. Supp. 2d 203, 206 (D. Me. 2004) ("[The] law does not allow a custodian of records to send them away after receiving a summons and then claim he cannot produce them, because they are no longer in his possession.") (citing United States v. Asay, 614 F.2d 655, 660 (9th Cir. 1980) ("Self-induced inability is not a defense to a contempt proceeding.") (citation omitted)).

**D.    Reynoso Violated the Seizure Warrant**

Relocating the 119.65 BTC to various wallets in an attempt to place this property beyond the United States' reach is a flagrant violation of the warrant. Moreover, Reynoso's refusal to transfer this property constitutes an additional violation. Accordingly, the Court **HOLDS REYNOSO IN CIVIL CONTEPMT** of the seizure warrant.

The United States seeks "compensatory sanctions requiring transfer of the Subject Assets to a Government-controlled wallet, as originally required by the Seizure Warrant." (Docket No. 1 at p. 13.) The sanctions imposed on Reynoso by this Court are intended to enforce compliance with the seizure warrant, not to exact punishment for his refusal to transfer the 119.65 BTC. See AngioDynamics, 946 F. Supp. 2d at 215 ("Defendants have the keys to their prison in their own pockets. The coercive fines and arrest warrant . . . will be lifted as soon as the court is satisfied that the *status quo ante* has been restored.") (internal citation and quotation omitted). Reynoso is **ORDERED** to transfer the 119.65 BTC to the government-controlled wallet in accordance with the seizure warrant. Moreover, Reynoso **SHALL** be fined $10,000.00 for every day that he violates the seizure warrant from the date that this Opinion and Order is published. Failure to comply may result in additional fines and/or incarceration.

**VIII. Conclusion**

For the reasons set forth above, the United States' request to hold Juan Carlos Reynoso in civil contempt is **GRANTED.** (Docket No. 1.) Reynoso is **HELD IN CIVIL CONTEPMT** of the seizure warrant issued by Magistrate Judge Héctor Ramos-Vega on January 31, 2025 in Case No. 25-077.

Reynoso's motion to quash is **DENIED.** (Docket No. 8.)

Reynoso is **ORDERED** to transfer the 119.65 BTC to the government-controlled wallet in accordance with the seizure warrant. Moreover, Reynoso **SHALL** be fined $10,000.00 for every day that he violates the seizure warrant from the date that this Opinion and Order is published. Failure to comply may result in additional fines and/or incarceration.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, March 4, 2025.


                              s/ Francisco A. Besosa
                              FRANCISCO A. BESOSA
                              SENIOR UNITED STATES DISTRICT JUDGE