IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>**Plaintiff**,<br><br>v.<br><br>JUAN CARLOS REYNOSO,<br><br>**Defendant.** | **Misc. No.** 25-068 (FAB) |

**OPINION AND ORDER**

BESOSA, Senior District Judge.

Before the Court is defendant Juan Carlos Reynoso ("Reynoso")'s motion to stay this proceeding pending an appeal. (Docket No. 27.) For the reasons set forth below, Reynoso's motion is **DENIED**.

**I.  Background**

On January 31, 2025, Magistrate Judge Héctor Ramos-Vega issued a warrant to seize property pursuant to 18 U.S.C. §§ 981-82 and 21 U.S.C. § 853(f). Case No. 25-mj-077, Docket No. 4. This warrant provides that the assets subject to seizure include: "119.65 [bitcoin ("BTC")] currently stored on the wallet with root address bc1qd02mfgh82dcefymptq3mxxqvydz29rfcgdgac" (approximately $12,650,785.94 in United States currency). Id. at p. 1. The warrant states that:

> JUAN CARLOS REYNOSO shall not obstruct, impede or interfere with the seizure of the SUBJECT ASSETS.

>The SUBJECT ASSETS must be transferred, within 24 hours from the date of this seizure warrant, to the following Government-controlled address: bc1q9mv775udnfza5ccrgg2cvh73fj7sscvxm2er2h.

Id.

The United States sent the seizure warrant to Walter Reynoso, defendant Reynoso's counsel (no relation), who indicated that he was authorized to receive the seizure warrant on behalf of defendant Reynoso. (Docket No. 1-4.)

Immediately after defense counsel received notice of the warrant, Reynoso transferred the 119.65 BTC to various accounts. These transfers and defense counsel's communications with the United States are set forth in the March 4, 2025 Opinion and Order. See United States v. Reynoso, Misc. No. 25-mc-068, 2025 U.S. Dist. LEXIS 40555 (D.P.R. Mar. 4, 2025) (Besosa, J.). The Court held Reynoso in contempt of Court, sanctioning him "$10,000.00 for every day that he violates the seizure warrant." Id. at *23-24. Reynoso remains in contempt of Court. As of today (April 14, 2025), Reynoso faces a $410,000.00 fine for his failure to comply with the seizure warrant.

On March 24, 2025, Reynoso moved to stay proceedings pending an appeal. (Docket No. 27.) He then filed an interlocutory notice of appeal on April 2, 2025 on this Court's order finding Reynoso in contempt of Court. (Docket No. 30.) See United States v.

Reynoso, Court of Appeals No. 25-1328, Docket No. 1.  The United States subsequently opposed Reynoso's motion to stay.  (Docket No. 32.)

## II. Legal Standard

A stay pending appeal is "not a matter of right."  Vaquería Tres Monjitas, Inc. v. Comas, 5 F. Supp. 3d 179, 181 (D.P.R. 2014) (Domínguez, J.) (quoting Virginian R.C. v. United States, 272 U.S. 658, 672 (1926)); see Maness v. Myers, 419 U.S. 449, 458-460 (1975) ("If a person to whom a court directs an order believes that the order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal.").  A stay is "an intrusion into the ordinary processes of administration and judicial review."  New York v. Trump, Case No. 25-1236, 2025 U.S. App. LEXIS 7022 at *27-28 (1st Cir. Mar. 26, 2025) (citing Nken v. Holder, 556 U.S. 418, 427 (2009)).

The following factors govern the Court's analysis: "(1) [w]hether the stay applicant has made a strong showing that it is likely to succeed on the merits, (2) whether the applicant will be irreparably harmed absent a stay, (3) whether the issuance of a stay will substantially injure the other parties interested in the proceeding, and (4) where the public interest lies."  Common Cause Rhode Island v. Gorbea, 970 F.3d 11, 14 (1st Cir. 2020) (quoting Nken, 556 U.S. at 426).  "The *sine qua non* of the stay

Misc. No. 25-068 (FAB)                                                4

pending appeal standard is whether the movants are likely to succeed on the merits." Officemax Inc. v. Cty Qwik Print, Inc., 751 F. Supp. 2d 221, 253 (D. Me. 2011) (citing Acevedo-García v. Vera-Monroig, 296 F.3d 13, 16-17 (1st Cir. 2002)).

**III. Discussion**

As a preliminary matter, Reynoso's appeal is subject to dismissal for lack of jurisdiction.  He challenges the "final opinion and order of the District Court holding [him] in civil contempt."  Case No. 25-1328, Docket No. 1 at p. 29.  Congress limited appellate jurisdiction, however, to "appeals from . . . final decisions of the district courts."  28 U.S.C. § 1291.  Generally, civil contempt orders are "interlocutory, that is, not final."  Morales-Feliciano v. Parole Bd. of Puerto Rico, 887 F.2d 1, 3 (1st Cir. 1989) (citation omitted).  Accordingly, appeals seeking to vacate sanctions for civil contempt are routinely dismissed for lack of jurisdiction.  See Appeal of Licht and Semonoff, 796 F.2d 564, 568 (1st Cir. 1986) (holding that litigants "may appeal only an order of criminal contempt before final judgment, not one of civil contempt") (citations omitted); Rhode Island Hosp. Trust Natl'l Bank v. Howard Communications Corp., 980 F.2d 823, 829 (1st Cir. 1992) ("Ordinarily, a civil contempt order is treated as a nonappealable interlocutory order.") (citation omitted); United States v. Kouri-Pérez, 187 F.3d 1, 4 (1st Cir.

1999) (dismissing an interlocutory appeal of civil sanctions imposed in a criminal action for lack of appellate jurisdiction); Fox v. Capital Co., 299 U.S. 105, 107 (1936) ("[Except] in connection with an appeal from a final judgment or decree, a party to a suit may not review upon appeal an order fining or imprisoning him for the commission of civil contempt."); United States v. Myers, 593 F. 3d 338, 344 (4th Cir. 2010) (dismissing an appeal because a "civil-contempt order issued in litigation brought against [the respondent]" is barred by the "final-judgment rule").

Exceptions to this rule "are plentiful." See, e.g., Morales-Feliciano v. Parole Bd. of Puerto Rico, 887 F.2d 1, 3 (1st Cir. 1989) ("Since the appealability of a civil contempt order is a matter of practical, rather than formal legal, considerations . . . we conclude that the Commonwealth's appeal is legally valid."). Reynoso will prevail before the First Circuit Court of Appeals only by establishing that this litigation falls within a valid exception. Invoking appellate jurisdiction here will prove futile, however, because Reynoso is unlikely to succeed on the merits.

    **A.    Likelihood of Success on the Merits**

Reynoso need not prove a "probability of success on the merits" to obtain a stay of the civil sanction. SEC v. Biochemics, Inc., 435 F. Supp. 3d 281, 296 (D. Mass. 2020) (citing Providence

Misc. No. 25-068 (FAB)                                              6

Journal Co. v. FBI, 595 F.2d 889, 890 (1st Cir. 1979)); see Exxon Corp. v. Esso Worker's Union, 963 F. Supp. 58, 59-60 (D. Mass. 1997) (noting that courts have "not interpreted literally the . . . requirement that the stay applicant make a strong showing that he is likely to succeed on the merits"); Cunningham v. Lyft, Case No. 19-11974, 2020 U.S. Dist. LEXIS 90333, at *10 (D. Mass. May 22, 2020) (noting that a stay applicant "does not [need to] convince the court that it was wrong on the decision now under appeal") (citation omitted).  Instead, Reynoso must establish that his appeal "[raises] serious and difficult questions of law in an area where the law is somewhat unclear."  Exxon Corp., 963 F. Supp. At 60 (citation omitted).

　　　Reynoso's motion to stay merely repeats the arguments that this Court previously rejected in its March 4, 2025 Opinion and Order.  For instance, Reynoso asserts that his "attorney was never advised orally, nor did he realize until two days later, that the warrant required a twenty-four (24) hour disgorgement." (Docket No. 27 at pp. 4-5.)  The Court set forth the communications between defense counsel and the United States regarding the seizure warrant in extensive detail, demonstrating that Reynoso received ample notice and opportunity to transfer the 119.65 BTC as ordered in the seizure warrant within the twenty-four hour timeframe. Reynoso, 2025 U.S. Dist. LEXIS 40555, at *14 ("Defense counsel's

refusal to open [the seizure warrant e-mail] with sufficient time to comply with the warrant is an act of willful ignorance, not a surreptitious plot to deprive Reynoso of his property."). The United States need not provide an oral summation of a seizure warrant when it sends defense counsel a copy of the document. The Court presumes that defense counsel is capable of reading a two-page seizure warrant in a timely manner.

Reynoso also contends that the "Court, without any direct evidence establishing true knowledge and intent, concluded that Respondent himself must have moved subject assets to a different bit-coin wallet after being informed of the warrant's content." (Docket No. 27 at p. 5.) This due process argument is unavailing.

A court may "hear" a motion for contempt on the papers if, "given the nature and circumstances of the case, the parties had a fair opportunity to present relevant facts and arguments, . . . and to counter the opponent's submissions." Gill v. United States, 516 F. Supp. 3d 64, 76 (D. Mass. 2021) (quoting Morales-Feliciano v. Parole Board of Puerto Rico, 887 F.2d 1, 6 (1st Cir. 1989) (internal citation and quotation omitted); see United States v. Winter, 70 F.3d 655, 661 (1st Cir. 1995) ("Generally, a court may impose civil contempt sanctions pursuant to the minimal procedures of notice and an opportunity to be heard; the reason

for this is that the civil contemnor may avoid the sanction by obeying the court's order."); FTC v. Case Equip. Co., 821 F. Supp. 790, 791 (D. Me. 1993) ("[Less] than a full adversary hearings have been held to comport with due process in the civil contempt context under certain circumstances," for example, "where the facts surrounding the contempt are undisputed and cannot be further elucidated by evidence") (citing In re Rosahn, 671 F.2d 690, 695 (2d Cir. 1982)); United States v. Melick, 959 F. Supp. 2d 193, 199 (D.N.H. 2011) ("In many cases, civil contempt can be established without the need for an evidentiary hearing.").

The record is replete with evidence establishing that Reynoso transferred the 119.65 BTC to various Bitcoin accounts to circumvent the seizure warrant. See Reynoso, 2025 U.S. Dist. LEXIS 40555. The United States submitted evidence demonstrating that Reynoso owns and controls the assets subject to seizure. Id. at *19 (noting that an affidavit prepared by a federal law enforcement agent and appurtenant exhibits establish that the subject assets belong to Reynoso). Reynoso does not dispute ownership. His motion to stay refers to control and notice without contradicting the record evidence. These rhetorical questions do not negate defense counsel's e-mail response accepting receipt of the seizure warrant, evidence that Reynoso fails to address in his motion to stay.

An evidentiary hearing would serve only to delay execution of the seizure warrant.  No issues of material fact exist in this civil contempt proceeding:  Magistrate Judge Ramos-Vega issued a seizure warrant ordering Reynoso to transfer 119.65 BTC to a government-controlled account; this property belongs to Reynoso; defense counsel accepted service of the seizure warrant; and Reynoso subsequently transferred the subject assets to evade forfeiture.  He continues to flout the seizure warrant despite the imposition of sanctions for civil contempt.  Consequently, his argument regarding the Court's purported failure to hold an evidentiary hearing is unconvincing.

**B.    Irreparable Harm**

The irreparable harm analysis is not "rigid."  Vaquería Tres Monjitas, Inc. v. Irizarry, 587 F.3d 464, 485 (1st Cir. 2009) (citation omitted).  "What matters is not the raw amount of irreparable harm a party might suffer, but rather the risk of such harm in light of the party's chances of success on the merits." Puerto Rico Hosp. Supply, Inc. v. Boston Scientific Corp., 426 F.3d 503, 507 n. 2 (1st Cir. 2005) (quoting the Massachusetts standard, which "closely tracks the federal standard").  Reynoso's claims of irreparable harm must be correct in "fact and reality." Common Cause Rhode Island v. Gorbea, 970 F.3d 11, 15 (1st Cir. 2020).

According to Reynoso, the daily sanctions pose a financial hardship. (Docket No. 27 at p. 7.) He posits that these sanctions will continue to inflict harm "until and unless a stay is issued." Id. This statement misconstrues the purpose of civil contempt. See Rodríguez-Miranda v. Benin, 829 F.3d 29, 45 (1st Cir. 2016) (noting that the imposition of sanctions for civil contempt serves "to coerce present or future compliance with an order of the court"). The harm sustained by Reynoso is self-inflicted. Financial hardship will subside once he complies with the seizure warrant. The civil contempt sanctions will continue to accrue, however, until Reynoso transfers 119.65 bitcoin to the government-controlled account.

Irreparable harm "most often exists where a party has no adequate remedy at law." Charlesbank Equity Fund II, Ltd. P'ship v. Blinds To Go, Inc., 370 F.3d 151, 162 (1st Cir. 2004) (citation omitted). Reynoso shall remit payment to the Clerk of the Court for his failure to comply with the seizure warrant. These funds will remain with the Clerk of the Court pending an appeal. Should Reynoso prevail, the Clerk of the Court will return payment in accordance with the corresponding mandate. Consequently, Reynoso's appeal of the March 4, 2025 Opinion and Order constitutes an adequate remedy at law. See M.A. Mortenson Co. v. United States, 877 F.2d 50, 51 (D.C. Cir. 1989) ("[An] order to pay money

as a sanction for the abuse of discovery usually does not – and in this case did not – inflict irreparable harm on the party . . . If, on appeal from the final judgment in this case, Grand Turk convinces this court that the sanction should not have been imposed, it will get its money back"); In re BYJU's Alpha, Inc., Case No. 24-10140, 2024 U.S. Dist. LEXIS 126742, at *13 (D. Del. July 18, 2024) ("The Bankruptcy Court further found that the funds are subject to reversal if Movants prevail on appeal, and thus would not cause irreparable harm.") (citation and internal quotation omitted); In re S.N.A. Nut Co., Case No. 95-399, 1996 U.S. Dist. LEXIS 695, at *9 (N.D. Ill. Jan. 24, 1996) ("Daily sanctions do not constitute irreparable harm.") (citing Classic Components v. Mitsubishi Electronics Am., 841 F.2d 163, 164-65 (7th Cir. 1988)).  Accordingly, Reynoso has failed to demonstrate irreparable harm.

    **C.**    **Harm to the United States and the Public Interest**

Because Reynoso failed to establish a likelihood of success on the merits and irreparable harm, the Court need not address the third and fourth prongs of the stay analysis.  See Meléndez v. Univ. of New Hampshire, Case No. 23-172, 2024 U.S. Dist. LEXIS 204468, at *3 (D.N.H. Nov. 8, 2024) ("Because Meléndez has not shown a likelihood of success on the merits, the court need not address the remaining factors").  Harm to the United

States and the public interest both militate toward denial of Reynoso's motion to stay, however, underscoring that the $10,000.00 daily fine is an appropriate sanction in this litigation. "These factors merge when the Government is the opposing party." Nken, 556 U.S. at 435. Reynoso "may not defy court orders because their commands are not to [his] liking. If the rule of law is to be upheld, it is essential that the judiciary takes firm action to vindicate its authority and to compel compliance with lawfully issued directives." Yipping Chen v. FBI, 721 F. Supp. 3d 1, 14 (D.D.C. 2024). The longer that Reynoso violates the seizure warrant, the more difficult it will be for the United States to locate the 119.65 BTC. Accordingly, Reynoso's motion to stay pending an appeal is **DENIED**.

**IV. Conclusion**

For the reasons set forth above, Reynoso's motion to stay pending an appeal is **DENIED**. (Docket No. 27.) Continued failure to comply with the seizure warrant may result in additional fines, incarceration, or both.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, April 14, 2025.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
SENIOR UNITED STATES DISTRICT JUDGE